SOVEREIGN CAMP, WOODMEN OF THE WORLD, v. CORA H. THIEBAUD.

**No. 12,705.**    (69 Pac. 348.)

SYLLABUS BY THE COURT.

1. PRACTICE, DISTRICT COURT—*New Trial—Discretion of Court.* The discretion committed to a trial court to set aside a verdict of a jury and grant a new trial is a legal and not an arbitrary one, and does not exist unless authorized by law or established precedent.

2. ———— *Uncontradicted Evidence—New Trial.* The uncontradicted evidence in this case all points to but one rational conclusion of fact, the one found by the verdict of the jury. The motion for a new trial was based upon the ground that the verdict was not sustained by sufficient evidence. *Held,* that it was error for the trial court to set aside the verdict and grant a new trial.

Error from Montgomery district court; A. H. SKID-MORE, judge. Opinion filed July 5, 1902. Reversed.

*Albert L. Wilson,* and *Brome & Burnett,* for plaintiff in error.

*Ergenbright & Banks,* for defendant in error.

The opinion of the court was delivered by

CUNNINGHAM, J. : This action was brought by the defendant in error to recover from plaintiff in error, a beneficiary association, the sum of $2100 due to her, as she claimed, under the provisions of a beneficiary certificate issued on the life of her husband, it being alleged that he died while a member of such beneficiary association, and after having complied with all the conditions requisite to the payment of said sum to the plaintiff, his wife. One of the conditions contained in such beneficiary certificate was that the same should be null and void should the member in-

sured by it die "by his own hand, either sane or insane." The answer alleged that the plaintiff's husband died by his own hand, whereby the terms of said beneficiary certificate became utterly null and void and of no effect, so that all benefits thereunder were absolutely forfeited. Under these pleadings, trial was had to the jury, who found generally in favor of the plaintiff in error, and specifically answered three questions as follows:

"1. Did not the insured, John A. Thiebaud, come to his death by a bullet fired from a pistol into his head April 20, 1899? A. Yes.

"2. If you answer the preceding question in the affirmative, was not the said pistol discharged by the deceased, John A. Thiebaud? A. Yes."

"10. If you answer question 2 in the affirmative, then was such pistol discharged by the deceased, John A. Thiebaud, voluntarily and intentionally, or was such pistol discharged accidentally and unintentionally? Answer fully. A. Voluntarily and intentionally."

Plaintiff below filed a motion for a new trial on four grounds:

"1. Misconduct of the jury and of the prevailing party.

"2. That the verdict was not sustained by sufficient evidence and is contrary to law.

"3. Newly-discovered evidence, material for plaintiff, which she could not with reasonable diligence have discovered and produced at the trial.

"4. Errors of law occurring at the trial, and duly excepted to by the plaintiff."

This motion was sustained and a new trial granted, from which ruling error is prosecuted to this court.

No showing whatever was made in support of the first and third grounds of the motion; so, if the action of the court in sustaining it is to be affirmed, it must

be because it was proper upon the second and fourth grounds.   As to the fourth ground—errors of law occurring at the trial and duly excepted to by plaintiff— we have carefully examined the entire record, noted every exception taken by defendant in error to the action of the court below, and find that in no instance did the court commit error as against her.   Hence, we are left to inquire only concerning the second ground—that the verdict is not sustained by sufficient evidence and is contrary to law.   If it is sustained by sufficient evidence, it is not contrary to law, as it is well settled in this state that it is entirely competent for parties to a life-insurance contract to provide that self-destruction by the insured, whether sane or insane, shall avoid the contract.  (*Hart v. Modern Woodmen,* 60 Kan. 678, 57 Pac. 936, 72 Am. St. Rep. 380.)

There was no conflict as to the facts upon the trial below.  Briefly summarized, they are as follows :  The deceased was a married man, with a family consisting of a wife and two children.   He was a tinner by trade and had but little, if any, property.   He had just purchased a little home, mortgaging it for all it was worth to obtain the purchase-money.  For the last three years preceding his death, he had been addicted to the use of intoxicating liquors to excess, and felt that his debauches were a disgrace to his family.   He told one person, about a week before the shooting, and while working on the coffin-box of a friend who had died, that he (Thiebaud) might be the next one to fill one of those boxes, and, if he did not quit drinking, he would put himself out of the way ; that a man was of no good to himself or his family when he was intoxicated.   He said that a man was better off dead than alive, and a man's family was better off without

him, having reference to the life insurance.   He told another, when speaking with reference to his drinking habit, which had become quite strong, that if he could not quit this thing he would kill himself, and this only a few days before the shooting occurred. The night before the shooting he was drunk on the streets, and came home about eleven o'clock at night intoxicated to such an extent that he hardly knew what he was about.   He and his wife had some words about the company he had been in, and he went to bed without any supper.   When he was called for breakfast in the morning, he got up and kissed the baby six or seven times and then kissed his other little girl, without speaking to his wife, who had called him and was there watching him.   She then went out into the kitchen to finish getting breakfast, and he went up-stairs in his nightclothes.   A sister of his wife was in the house at the time, and he had not been in the habit of going about the house in his nightclothes.   This proceeding astonished his wife, and she followed him up-stairs and found him feeling in the bottom of a trunk.   She started to go downstairs, he following her, but he stopped and looked out of the window, and she waited anxiously at the foot of the stairs for him to come down.   He came down and she went into the kitchen and he into the bedroom without speaking a word to her, and closing the bedroom door leading into the kitchen.   A revolver was kept in a commode drawer in the bedroom.   Shortly afterward she went into the parlor and found him sitting in an armchair, putting on one of his socks.   She soon returned to the kitchen, but had not been there long until she heard the report of a pistol and she and her sister ran into the room and found him lying on the floor with a bullet

hole in the side of his head a little above and in front of his right ear. The flesh was powder-burned and the hair singed. The revolver lay at his feet, having in its cylinder one empty shell. His death resulted immediately from this wound. He was carrying $2100 insurance in this association, $2000 in the A. O. U. W., and about a month before this had taken out $1000 in another company, making an aggregate of $5100.

There was no evidence whatever to indicate that a murder had been committed or that his death was accidental. The only rational or, indeed, conceivable explanation is that the deceased had committed suicide; any other conclusion would outrage all reason. Had the jury found otherwise, its finding would have been set aside as being against the evidence. So that the question is, May a trial court arbitrarily set aside a verdict in such a case and award a new trial?

We are aware that great latitude must be allowed trial courts in supervising the verdicts of a jury, and that this court has frequently declined to reverse the action of trial courts in setting aside verdicts and awarding new trials, declaring the rule to be as stated in *Ireton v. Ireton*, 62 Kan. 358, 63 Pac. 430:

"If the order of the court granting a new trial can be sustained upon any of the grounds alleged in the motion, this court is bound to sustain it. . . . A much stronger case for reversal is required where a new trial has been granted by the district court than where one has been refused."

But these rules cannot be taken as authorizing the trial court arbitrarily to set aside verdicts and grant new trials without reason. A lawsuit is an orderly proceeding. Its conduct is regulated by certain well-defined rules. The judge is as much bound by these rules as are the jury. He may not, without commit-

ing error, set aside a verdict regularly obtained without legal reason therefor; and where, as in this case, there is no conflicting evidence, and it all points unmistakably to but one conclusion, so as to leave no room for any reasonable inference except the one reached by the jury, there appears no legal reason why the verdict should be set aside and the parties put to the trouble and expense of another trial.

"It is the interest of the public that there should be an end to litigation, and a court is not compelled to grant a new trial even•if all the parties request it; but where there are no grounds for a new trial, in the interest of an end to litigation no new trial should be granted." (*A. T. & S. F. Rld. Co. v. Brown,* 51 Kan. 6, 32 Pac. 630; *Lindh v. Crowley,* 29 id. 756.)

The discretion of district courts in the matter of granting or refusing new trials is a legal, not a capricious, one. It must be warranted by law and guided by established precedent. It may not be exercised simply because the judge might wish the verdict to be otherwise. The applicant therefor must show a legal reason for its exercise. The saying that it takes thirteen to render a verdict has passed to an adage, but can mean nothing more than that, in cases where conflicting evidence raises a substantial and serious doubt in the mind of the trial judge of the correctness of the conclusion reached by the jury, he may interfere; but where, as in the case at bar, no such doubt could arise on the evidence, and no suggestion is made that there exists other evidence which would tend in the least to change the view taken by the jury, the setting aside of the verdict and the granting of a new trial is an unwarranted exercise of the court's power. (2 Gra. & Wat. New Tr. 46; *Gold v. Ives,* 29 Conn. 119.)

We have not been favored by the counsel for de-

fendant in error with any discussion, either oral or in brief, of the question involved, and are unable to arrive at the theory upon which the action of the trial court was based.

We are constrained to the conclusion that there existed no legal reason authorizing the court to set aside the verdict of the jury, and, hence, reverse such order and direct that judgment be entered thereon for the defendant below.

JOHNSTON, GREENE, ELLIS, JJ., concurring.