JAMES S. RANSOM, Respondent, v. THE UNION DEPOT COMPANY and UNITED STATES EXPRESS COMPANY, Appellants.

Kansas City Court of Appeals, March 7, 1910.

1. **NEGLIGENCE: Sudden Peril: Rule of Conduct.** The movements of one who is suddenly confronted with impending and unexpected danger are not governed by the ordinary dictates of care and reason, but by the instinct of self-preservation.

2. ———: ———: ———. Where the evidence shows that an employee of the defendant express company was unloading an express truck on the platform of the Union Depot, and that when suddenly notified of the approach of a train endangering the truck and persons in the vicinity, he acted with all the promptness and care to be expected of one suddenly confronted with such a danger, no negligence on his part has been shown.

3. **PRACTICE: Sufficiency of Evidence: Conjecture.** There is not sufficient evidence in this case to support a finding that the express truck collided with a baggage truck, causing the latter to collide with a moving train, and to be thrown thereby in contact with the plaintiff.

4. **NEGLIGENCE: Railroads: Licensee or Invitee.** A landowner does not owe to a mere naked licensee the duty of ordinary care. But where property has been used long, continuously and notoriously, such users may acquire the rights of an invitee. When railroad trains are operated over such property, the least duty owed by the owner to such persons thereon is that of ordinary care to so operate said trains and to so place its trucks as not to injure such persons.

5. ——: ——: **Dangerous Obstructions Near Track.** Where a baggage truck is left in such position that the jar of an approaching train will cause it to roll into contact with such train, the depot company so placing such truck cannot be held to have exercised due care as a matter of law.

6. **PLEADING: Insufficient Allegation.** An allegation that defendant carelessly and negligently pushed or caused or permitted to be pushed upon and against the plaintiff a hand truck with great force and violence, will not permit proof of sending in a train on the wrong track, or the placing of a truck in such a position that a slight touch or jar will cause it to roll into the train.

7. **PRACTICE: Remanding for New Trial on Amended Petition.** Where the evidence shows that the plaintiff may have a good cause of action on a ground not pleaded in his original petition, the court may send the case back to enable the plaintiff to amend his petition and try the new issue.

Appeal from Jackson Circuit Court.—*Hon. Hermann Brumback*, Judge.

REVERSED AS TO THE UNITED STATES EXPRESS COMPANY; REVERSED AND REMANDED AS TO THE UNION DEPOT COMPANY.

*Frank Hagerman* and *Kimbrough Stone* for appellant, U. S. Express Co.

(1) Plaintiff was a licensee and this defendant owed him no duty until it discovered or should have

discovered his presence.   Kelly v. Benas, 217 Mo. 1;
Wencker v. Railroad, 169 Mo. 592; Barney v. Railroad,
126 Mo. 372; Straub v. Soderer, 53 Mo. 38; Refining
Co. v. Mobley (Ky.), 121 S. W. 657.   (2) No act of this
defendant was a proximate cause.   a.   Generally.
Boone v. Insurance Co., 95 U. S. 117; Hudson v.
Railroad, 101 Mo. 13; Meade v Railroad, 68 Mo. App.
92; Foley v McMahon, 114 Mo. App. 442.   b.   Rule of
responsibility of person acting under stress of immi-
nent danger.   Hull v. Transfer Co., 135 Mo. App. 119;
McFern v. Gardiner, 121 Mo. App. 1; Boyce v. Rail-
road, 120 Mo. App. 168; Lang v. Railroad, 115 Mo.
App. 489; Dutzi v. Geisel, 23 Mo. App. 676; Lange v.
Railroad, 208 Mo. 458; Root v. Railroad, 195 Mo. 348;
Sweeney v. Cable Co., 150 Mo. 385; Dickson v. Railroad,
124 Mo. 140; Bischoff v. Railroad, 121 Mo. 216;
Slaughter v. Railroad, 116 Mo. 269; Kleiber v. Railroad,
107 Mo. 240; Siegrist v. Arnot, 86 Mo. 200, s. c. 10 Mo.
App. 197; Adams v. Railroad, 74 Mo. 553.

*Dana, Cowherd & Ingraham* for appellant, Union
Depot Co.

(1) There was no negligence of any kind proven
against defendant, Union Depot Company, and certain-
ly no proof authorizing the submission of the question
to the jury under an allegation that said defendant
"negligently pushed or caused or permitted to be pushed
upon and against plaintiff said hand truck."   To sus-
tain this allegation either a positive act of negligence
must be shown or a negligent failure to prohibit.   Cyc.,
vol. 30, p. 1461; Century Dictionary, vol. 5, p. 4407.
(2) As plaintiff was a trespasser, or at the utmost a
bare licensee, defendant Union Depot Company owed
to him no duty except not to wilfully or wantonly in-
jure him or to exercise ordinary care to avoid injuring
him after its servants discovered him on said plat-
form and in a position of danger.   Kelly v. Benas, 217

Mo. 9; Barney v. Railroad, 126 Mo. 372; White v. Stifel, 126 Mo. 295; Wencker v. Railroad, 169 Mo. 592; Refining Co. v. Moberly (Ky.), 121 S. W. 657; Barry v. Cemetery Assn., 211 Mo. 105; Straub v. Soderer, 53 Mo. 38. (3) The trucks were in the clear until struck by the messenger of the express company and thereby knocked against the incoming train. Even if they were left in a diagonal position by the Depot Co., such act was not the proximate cause of the injury. Saxton v. Railroad, 98 Mo. App. 494; Kappes v. Shoe Co., 116 Mo. App. 154; Wilson v. Railroad, 129 Mo. App. 658; Foley v. McMahon, 114 Mo. App. 442; Dickson v. Railway, 124 Mo. 149; Hudson v. Railroad, 101 Mo. 13; Boone v. Insurance Co., 95 U. S. 117; Railroad v. Columbia, 65 Kan. 390; Stanley v. Railroad, 114 Mo. 606. (4) Even if defendant, Union Depot Company, was negligent, yet this would furnish no ground of action unless the injury was the probable as well as the natural consequence of such negligence. Saxton v. Railroad, supra; Kappes v. Shoe Co., supra; Wilson v. Railroad, supra; Brewing Assn. v. Talbot, supra; Foley v. McMahon, supra; Railroad v. Kellog, 94 U. S. 469; Fuchs v. St. Louis, 167 Mo. 648; Lynch v. Transit Co., 102 Mo. 642; Smith v. Packing Co., 82 Mo. App. 9; Christy v. Hughes, 24 Mo. App. 277. (5) If the truck was left in a position not parallel to track five, yet there was no evidence showing or tending to show this in any way caused or contributed to the injury. Even if such a position of the truck was negligent there is no causal connection shown between such act and the injury complained of. Stanley v. Railroad, supra; Jackson v. Elevator Co., 209 Mo. 506; Moriarity v. S. & S. Co., 132 Mo. App. 650.

*George H. English, Jr.,* for respondent.

(1) This is clearly a case of concurrent negligence on the part of both defendants, rendering them both liable. Newcomb v. Railroad, 169 Mo. 409; Taylor v.

Railroad, 137 Mo. 363; Waller v. Railroad, 59 Mo. App. 426; Holmes v. Railroad, 207 Mo. 164; Andrews v. Boedeker, 126 Ill. 605, 9 Am. St. 649; Railroad v. Conery, 61 Ark. 381, 54 Am. St. 262; Shearman & Redf., Neg. (4 Ed.), par. 31; Thomson, Negligence, 1088; Carterville v. Cook, 129 Ill. 152, 16 Am. St. 248; Nagel v. Railroad, 75 Mo. 653; Boggs v. Railroad, 18 Mo. App. 274; Morrison v. Railroad, 27 Mo. App. 418; Browning v. Railroad, 124 Mo. 55; Benjamin v. Railroad, 133 Mo. 274; Bassett v. City, 53 Mo. 290; Brennan v. City, 92 Mo. 482; Vogelgesang v. City, 139 Mo. 127; Brash v. City, 161 Mo. 437; Meade v. Railroad, 68 Mo. App. 92; Joseph v. Electric Co., 104 La. 634. (2) The defendants owed plaintiff the duty of exercising ordinary care. Hicks v. Railroad, 64 Mo. 430; Railroad v. Johns, 36 Kan. 769; Ingalls v. Express Co., 44 Minn. 128; Rowley v. Railroad (Wis.), 115 N. W. 865. (3) The petition sufficiently and properly charges negligence. Benham v. Taylor, 66 Mo. App. 308; Wills v. Railroad, 44 Mo. App. 51; Foster v. Railroad, 115 Mo. 165.

JOHNSON, J.—This suit is for negligence. Verdict and judgment were for plaintiff in the sum of $1500, and the case is before us on the appeal of defendants.

The injury occurred about 7:30 o'clock in the morning of May 26, 1902, on the platform of the Union Depot in Kansas City. Plaintiff was not on the platform on any business with the defendants but was using it solely as a way of travel from his home, which was on the bluffs east of the depot to his place of business on Union avenue, a public street on the northwest side of the depot. The course of the depot buildings is from the southwest to the northeast. Union avenue runs parallel to them. On the west, the depot property is bounded by Santa Fe street, which runs north and south. South of the property are the yards of the Burlington railroad, and they are bounded on the south

by Twelfth street, which runs east and west. A high board fence separates the yards from the street, but two open gates were in this fence near its west end. Plaintiff entered by one of these gates, passed across the railroad yards, reached the southwest end of the depot tracks which run parallel with the depot on the southeast side thereof and intended to walk up the platform to the main entrance of the depot and to pass through the building to Union avenue. He might have avoided the route he chose by going north on Santa Fe street to its intersection with Union avenue, but that way was longer and not so easy as that over the depot platform.

There was a sign at the gate to warn away trespassers, but it appears the public, with the knowledge of the railroad and depot officials, had disregarded that warning and for six years or more had been in the habit of using the way taken by plaintiff for travel from the bluffs to the territory beyond the depot. About three hundred people traveled this way daily. The tracks in the depot platform are laid in pairs. The pair nearest the depot consists of tracks numbered 1 and 2; the next pair of tracks, 3 and 4, and the last pair, 5 and 6. The union depot is owned and operated by the defendant Depot Company and is used by many railroads as a passenger station. The property is used also by the Express Companies that do business with the railroads. A passenger train had come in on track No. 6, and employees of the defendant Express Company were unloading the express car. They had run a big express truck alongside and had it about half loaded when an employee of the Depot Company warned the man in charge of the truck that a passenger train was coming in on track 5 from the west. The train was coming fast and the truck was on track 5, or so near that track that it would be struck if not moved out of the way. The expressman in charge of the truck received the warning so late that he had but scant time

to remove the truck. He did succeed in pulling it across track 5 to the wide space between that track and track 4, but the incoming engine missed the tail of the truck by not over a foot. In the open space between tracks 4 and 5, defendant had a line of baggage trucks not then in use. One of these trucks was out of line and one end of it was quite close to track 5, but in the clear. This was a two-wheeled truck with a small wheel under each end of its platform. When at rest only one of these small wheels could touch the ground, consequently, the truck was unstable and easily shifted from one position to another. The depot platform sloped slightly from the place where this truck stood to track 5, and as the passenger train came in, the truck moved towards the train until it came in contact with one of the passing coaches and was hurled back with violence.

At that time plaintiff, who was walking along in the space between tracks 4 and 5, was struck and injured by the flying truck. The railroad company operating the train (the St. Louis & San Francisco Railroad Company) was made a party defendant, but the jury returned a verdict in its favor. Each of the present defendants offered a demurrer to the evidence but the court overruled both demurrers.

First, we shall dispose of the question of the liability of the Express Company. We seriously doubt that the evidence, even in the light most favorable to plaintiff, will support the inference of a collision between the truck pulled by the expressman and the depot truck. The expressman denies that there was a contact of the two vehicles, no witness states positively that there was a collision between them, and it is reasonable to think that the vibration of the platform caused by the passing train started the depot truck forward. We think the jury was compelled to indulge in conjecture to find against the Express Company on this fact. Moreover, we may assume for argument that the two trucks did collide, and still we must say that

the evidence fails to accuse the expressman of negligence. He could not know on what track the passenger train would come in, and it was the custom of the depot company to send a pilot ahead to give warning. Either on account of the slowness of the pilot, or because of the speed of the train, the expressman and his truck were in great danger from the approaching train when he received the warning. The expressman might have abandoned the truck and its load and sought safety in flight, but he stuck to his post and labored to get the truck out of the way. Such conduct must be commended and is not subject to adverse criticism. Not only would a collision between the train and the truck have been destructive of his employer's property, but it might have endangered the safety of persons in the vicinity. It is suggested in the evidence that the expressman hesitated for a moment and also that he did not follow the most expeditious course for removing the truck to a place of safety. The suggestions amount to nothing more than an expression of opinion, but if well founded, they afford no ground for an inference of negligence. The expressman was suddenly confronted by a great peril which gave him no time to think. The law imposes no rules of conduct upon one who is suddenly confronted by impending danger and is compelled to act, not by the dictates of care and reason, but by the instinct of self-preservation. [Hull v. Transfer Co., 135 Mo. App. 119; McFern v. Gardiner, 121 Mo. App. 1; Boyce v. Railway, 120 Mo. App. 168; Lang v. Railway, 115 Mo. App. 489.]

In the case last cited, we said: "The instinct of self-preservation in such cases often destroys judgment and impels men, who ordinarily are careful and prudent, to conduct themselves with extraordinary recklessness. With the fact indisputable that the expressman was in imminent peril, we hold his subsequent conduct did not raise an issue of fact. The demurrer

to the evidence offered by the Express Company should have been given.

Passing to the case presented by the evidence against the Depot Company, we find the jury should have been directed to return a verdict for that defendant, not on the ground that no negligence is shown by the evidence, but because there is no support to the specific negligence alleged in the petition. The only negligence alleged is that the defendant "carelessly and negligently pushed or caused or permitted to be pushed upon and against the plaintiff said hand truck with great force and violence," etc. The evidence of plaintiff discloses that the Depot Company was negligent in two respects. First, in sending the passenger train in on track 5, without giving the expressman sufficient warning to enable him to remove his truck and, second, in leaving the depot truck in a place and position where a slight touch or even the jar of the passing train might cause it to roll into the train. Neither of these acts of negligence may be included within the scope of the averment without distorting the plain and obvious meaning of the language employed. No rule is better settled that that which holds the right of the plaintiff to recover to a cause of action falling within the legitimate scope of his petition. [Hamilton v. Railway, 114 Mo. App. l. c. 509, and cases cited.]

What we have said compels the remanding of the case as to the Depot Company. Plaintiff then may amend his petition to include the cause of action his proof will sustain. We do not agree with defendant that the judgment should be reversed outright on the ground that there is no proof of negligence of the Depot Company. That conclusion rests on the postulate that defendant did not owe to plaintiff the duty of ordinary care, but only the duty not to wantonly injure him.

Plaintiff had no business with the Depot Company

or with any of the railroads, but was traveling across the property for his own purposes. He was not a trespasser, however, since his use of the way was known to and acquiesced in by the owner of the property. He was a licensee and, as such, defendant owed him the duty not to wantonly or recklessly injure him. Counsel argue that defendant owed him no other duty and, in support of the argument, cite the following cases: Kelly v. Benas, 217 Mo. 1; Barney v. Railway, 126 Mo. 372; White v. Stifel, 126 Mo. 295; Wencker v. Railway, 169 Mo. 592; Refining Co. v. Mobly (Ky.), 121 S. W. 657; Barry v. Cemetery Ass'n, 211 Mo. 105; Straub v. Soderer, 53 Mo. 38. In the Straub case, the Supreme Court said: "He is bound also to use care and diligence to keep the premises in a safe condition for the access of persons who come therein by his invitation, express or implied, for the transaction of business. But it is equally true, that the owner or occupant is not bound to make the land, or buildings thereon, safe for any purpose which is unlawful or improper or for which he could not reasonably anticipate that it would be used. He is not responsible for the consequences of the use of his property in a mode for which it was obviously never designed. [Shear. & Redf., Neg., 563.] A mere passive acquiescence on the part of the owner or occupant in the use of real property by others, does not involve him in any liability to them for its unfitness for such use. One who enters on premises by permission only, without any enticement, allurement or inducement held out to him by the owner or occupant, cannot recover damages for injuries caused by obstructions or pitfalls. He goes there at his own risk, and enjoys the license subject to its concomitant perils. No duty is imposed by law upon the owner or occupant to keep his premises in a suitable condition for those who come there solely for their own convenience or pleasure, and who are not either expressly invited to enter or induced to come upon them by the purpose for which the prem-

ises are appropriated and occupied, or by some preparation or adaptation of the place for use by customers or passengers, which might naturally and reasonably lead them to suppose that they might properly and safely enter. [BIGELOW, C. J., in Sweeny v. Old Colony & N. P. R. R. Co., 10 Allen 368, 372.]" But in Hicks v. Railroad, 64 Mo. 430, the same court said: "In approaching stopping places where people are in the habit, for business or pleasure, of congregating, they must exercise the care and prudence which a proper regard for human life dictates, and to hold that a railroad company is only liable for wanton injury in such a case as we are considering, would encourage recklessness in the running and managing of trains, which would be intolerable. These companies not only owe a duty to passengers and others lawfully on their tracks and platforms, but a duty to the public to exercise the rights conferred upon them with a due regard to the safety of all persons and property."

In Barney v. Railway, supra, it was held: "Even as to a licensee, the rule is that 'no duty is imposed by law upon the owner or occupant to keep his premises in a suitable condition for those who come there solely for their own convenience or pleasure, and who are not either expressly invited to enter or induced to come upon them by the purposes for which the premises are appropriated or occupied, or by some preparation or adaptation of the place for use by customers or passengers, which might naturally and reasonably lead them to suppose that they might properly and safely enter.' In short, mere passive acquiescence of the occupier in a certain use of his land by others, generates no liability on his part. [Moore v. Railroad, 84 Mo. 485.]"

And in Kelly v. Benas, supra, the court said: "One applicable general rule is that there must be a duty raised by the law and breached by defendant before an action for negligence lies. Another is that the landowner or occupant owes no duty to trespassers or vol-

unteers going upon his land for their own purposes, to maintain it in any particular condition for their benefit (citing cases). Volunteers, bare licensees and trespassers take the premises for better or for worse, as they find them, assuming the risk of injury from their condition, the owner being liable only for concealed spring guns, or other hidden traps intentionally put out to injure them, or any form of willful, illegal force used towards them. To invitees, however, he owes the active duty to exercise reasonable care for their safety."

Nothing more may be drawn from these cases in aid of the position of defendant than that the landowner does not owe to a mere naked licensee the duty of ordinary care, but whatsoever may be said about the justice of that rule, it has no application here where the plaintiff and the public generally had been using the platform so long, so continuously and so notoriously that defendant should be held not only to have tolerated the use but to have invited it. The basic principle of all negligence law is that one should so use his own as not to injure his fellow and when those engaged in the operation of such dangerous instrumentalities as railroad trains know that persons are likely to be on or in close proximity to the tracks, the least duty they owe to such persons is that of ordinary care. We quote with approval the following excerpt from the case of Rowley v. Railroad, decided by the Supreme Court of Wisconsin, 135 Wis. 208; 115 N. W. Rep. 865:

"But it is equally well established in this State that, where a railroad company has by long acquiescence licensed the public to use its station grounds for ordinary travel and passage to and fro, the company must conduct its business over such licensed ways with ordinary care to prevent injury to such licensees, and that the rules of ordinary care in such cases require a greater measure of vigilance than would be required at a place where no such license had been given. [Townley v.

C. M. & St. P. Railway Co., 53 Wis. 626; 11 N. W. 55; Mason v. C. St. P. M. & O. Railway Co., 89 Wis. 151, 61 N. W. 300.] Ordinary care in such cases will be that degree of care which is reasonably adequate to meet and avoid the dangers which ought to be anticipated under all the circumstances, including the fact of the licensed use. [Carmer v. Railway, 95 Wis. 513, 70 N. W. 560.] So, while the licensee must take the licensed grounds or platforms as he finds them, and cannot predicate negligence upon defects therein, he is entitled to expect that defendant will exercise ordinary care in view of all the circumstances in the operation of its business at and about the licensed ways."

We hold the evidence of plaintiff sustains the conclusion that the Depot Company owed him the duty of ordinary care. It follows that the judgment must be reversed as to the Express Company and reversed and remanded as to the Depot Company. Accordingly it is so ordered. All concur.