No. 20,759.

G. C. BUTLER, *Appellee,* v. JOHN F. MILNER et al. (F. L. GOOD-NIGHT, *Appellant*).

### SYLLABUS BY THE COURT.

TRIAL—*Verdict—Motion for New Trial Denied—Judgment—Approval of Verdict by Trial Judge Not Clear.* Where a motion for a new trial is filed on the ground that the verdict and findings are contrary to the evidence, and the trial judge in overruling the motion makes a statement from which this court is doubtful whether he intended to give his approval to the verdict, or overruled the motion and rendered judgment on the verdict and findings because they were sustained by some positive evidence, *held,* the judgment should be reversed and the cause remanded with directions that a new trial be granted, unless the trial judge shall make a finding that he approves the verdict, and in case the verdict is approved, the judgment will be affirmed.

Appeal from Clark district court; LITTLETON M. DAY, judge. Opinion filed July 7, 1917. Reversed.

*Francis C. Price,* of Ashland, for the appellant.

*W. W. Harvey,* of Ashland, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The action was to foreclose a mortgage on property consisting of a livery stable at Englewood. The appellant, F. L. Goodnight, traded a secondhand Ford automobile for the property. The case was in this court once before. (*Butler v. Milner,* 95 Kan. 463, 148 Pac. 605.) In the recital of facts in the former opinion it was erroneously stated that the machine was traded to Butler. It was traded to John F. Milner, the mortgagor. Butler became the owner of the mortgage by an exchange or trade with the original mortgagee when the mortgage was long past due.

The main contention arises over an assumption clause in the deed to Goodnight, who claims merely to have bought the equity in the property intending to dispose of it at the first opportunity by trading it again. He went to Newby, a banker and notary at Englewood, and arranged with him to draw the deed. Newby afterwards prepared it and had Milner execute and acknowledge it, and testified that without authority from

Butler v. Milner.

Goodnight and without the latter's knowledge he inserted in the deed the clause by which the grantee assumed payment of the mortgage. He further testified that he did not understand at the time the legal effect of the language he inserted and thought it meant the same as the words, "subject to a mortgage"; that he knew that Goodnight was only trading for the equity, and that it was not the intention of the parties that payment of the mortgage should be assumed. He sent the mortgage to Ashland to be recorded. His testimony is that when Goodnight subsequently traded the property to Maphet he was again requested to draw the papers, and inserted in second deed the same assumption clause without authority from Goodnight or Maphet; further, that Goodnight never had the first deed in his possession and had never seen it, and signed the second one without reading it. Goodnight's answer pleaded the mistake in the execution of the deed, and denied that he had ever assumed or agreed to pay the mortgage. The reply alleged that after taking possession of the property under his deed Goodnight sent word to the original mortgagee, then holder of the mortgage, to the effect that he had purchased the property from Milner and had assumed and agreed to pay the debt.

In the former appeal it was held that the trial court erred in rendering a judgment against Goodnight, as there was evidence to go to the jury on the defense that the assumption clause was inserted through a mistake of the scrivener.

At the second trial the jury found against the defendant Goodnight and answered a number of special questions finding that he had assumed and agreed to pay the debt. The principal error relied upon in the present appeal is the refusal to set aside the verdict and findings and grant a new trial. There was some testimony, if it was believed, to sustain the verdict and findings. On the other hand, there was the direct and positive testimony of Mr. Newby, the banker who drew the conveyances, to the effect that it was the intention of both parties to the deed that Goodnight was merely trading for the equity in the property, and that the assumption clause was inserted by a mistake accounted for by Newby's ignorance of the law. The positive testimony of Newby and of Goodnight is to some extent supported by certain uncontradicted facts as to the

comparatively insignificant value of the property compared with the amount of the mortgage, and Goodnight's knowledge of these facts. It can not be doubted, however, that the verdict and findings are sustained by sufficient evidence, and, if the verdict and findings were approved by the trial court, the judgment must be affirmed. And this presents the only question about which there is a doubt. In ruling upon the motion for a new trial the judge of the court made the following statement:

"Well, I think that there is some evidence, some positive evidence, that the contract between Goodnight and Milner was to pay that mortgage—was to assume it. Probably the court might have decided otherwise from the proof than what the jury did, but there is enough evidence to uphold that verdict, and I think it would be error for the court to set it aside, for the reason that it is a matter left to the jury, and they decided, and that being the paramount issue, that point of fact settled everything else in that case. The jury found positively that there was no mistake, but that it was put there by the parties' agreement. I think the motion for a new trial should be overruled, and the motion to set aside the findings will also be overruled. Judgment will be rendered on the findings of the jury and their general verdict."

It is appellant's contention that the statement shows the trial judge did not give his approval to the verdict, but deemed it to be his duty to overrule the motion and render judgment on the verdict and findings because they were sustained by some positive evidence. It is quite usual for positive evidence from one side of a law suit affirming a fact to be met by positive evidence from the opposing side denying the fact; and it is first the function of the jury to weigh the conflicting evidence and determine what the fact is. After the jury have performed their function a duty rests upon the court to approve or disapprove the verdict. Of course, a trial judge can not rightfully decline to perform his duty in the premises merely because there was positive evidence to sustain the verdict. "He must be controlled by his own judgment, and not by that of the jury." (*K. C. W. & N. W. Rld. Co. v. Ryan,* 49 Kan. 1, 12, 30 Pac. 108.)

The sole function of the jury is to return a verdict, but the matter does not rest there; before a judgment can be rightly entered upon the verdict the judge of the court must exercise a judicial function and approve or disapprove the verdict. It can not be doubted that frequently miscarriages of justice

Butler v. Milner.

would be avoided by a more vigorous exercise of the trial court's discretion in granting new trials. And it is doubtful if a weightier responsibility rests upon the judge of the district court than the proper exercise of this part of his judicial functions. At every session we affirm judgments which do not accord with our views of justice as presented by the printed record, but solely because we are obliged to assume that the trial judge, in refusing to grant a new trial, has added to the verdict of the jury the weight of his approval, after a full opportunity to see and hear the witnesses, which this court can not have.

The duty and responsibility of the trial judge after the return of a verdict has been often commented upon in former opinions. In *K. C. W. & N. W. Rld. Co. v. Ryan,* supra, it was said:

"When the judgment of the trial judge tells him the verdict is wrong, whether from mistake, or prejudice, or other cause, no duty is more imperative than that of setting it aside and remanding the questions at issue to another jury. While the case is before the jury for their consideration, the jury are the exclusive judges of all questions of fact; but when the matter comes before the court upon a motion for a new trial, it then becomes the duty of the trial judge to determine whether the verdict is erroneous. He must be controlled by his own judgment, and not by that of the jury." (p. 12.)

"Where a new trial has been granted, both parties have another opportunity of having a fair and impartial trial upon the merits of the action. But where a new trial has been refused, the matter is ended unless a reversal can be had. Hence new trials should be favored instead of being disfavored, wherever any question can arise as to the correctness of the verdict. As a rule, no verdict should be allowed to stand unless both the jury, and the court trying the cause, can say that they believe that the verdict is correct." (*Atyeo v. Kelsey,* 13 Kan. 212, 216.)

In *Sanders v. Wakefield,* 41 Kan. 11, 20 Pac. 518, it is said:

"New trials ought always to be granted whenever, in the opinion of the trial court, the party asking for a new trial has not in all probability had a reasonably fair trial, and has not in all probability obtained or received substantial justice." (p. 14.)

In *Ireton v. Ireton,* 62 Kan. 358, 361, 63 Pac. 429, it was said that if the trial court "is not satisfied with the verdict and is convinced that it is clearly against the weight of the evidence, no duty is clearer than the granting of a new trial."

(See, also, *White v. Railway Co.*, 91 Kan. 526, 138 Pac. 589, and cases cited in the opinion.)

On the other hand, the granting of a new trial is a matter resting in the sound discretion of the trial court, and in respect to the exercise of this sound judicial discretion it has been said:

"The discretion of district courts in the matter of granting or refusing new trials is a legal, not a capricious, one. It must be warranted by law and guided by established precedent. It may not be exercised simply because the judge might wish the verdict to be otherwise. The applicant therefor must show a legal reason for its exercise. The saying that it takes thirteen to render a verdict has passed to an adage, but can mean nothing more than that, in cases where conflicting evidence raises a substantial and serious doubt in the mind of the trial judge of the correctness of the conclusion reached by the jury, he may interfere." (*Sovereign Camp v. Thiebaud*, 65 Kan. 332, 337, 69 Pac. 348.)

From the language used by the trial judge in overruling the motion for a new trial in this case, we are not able to satisfy our minds in respect to the reasons which controlled the decision. If a new trial was refused because, as stated, there was some positive testimony to support it, that was not a sufficient reason; nor was that reason aided by the fact that the jury, in answer to special questions, "found positively that there was no mistake, but that it [the assumption clause] was put" in the deed by agreement of the parties.

If, on the other hand, the trial judge intended to give his approval to the verdict, we are bound by the result regardless of any opinion we might have as to the right or wrong of the judgment, because there is no ground for any suggestion that to deny a new trial would have been an abuse of discretion if the court approved the verdict. Indeed no suggestion of that kind is made.

For the reasons stated we think the judgment should be reversed and the cause remanded with directions that a new trial be granted, unless the trial court shall make a finding that it approves the verdict. In case the verdict is thus approved, the judgment will be affirmed. It is so ordered.