## TINCH et al. v. FARMERS EXCHANGE BANK et al.

No. 18797. Opinion Filed Jan. 22, 1929.

Rehearing Denied April 30, 1929.

[redacted]

Bowling & Farmer, for plaintiffs in error.

Cicero I. Murray, for defendants in error.

DIFFENDAFFER, C. This is an appeal from an order confirming a sale of real estate under an order of sale in a foreclosure of a real estate mortgage. Upon return of the order of sale, plaintiffs in error, defendants below, and hereinafter referred to as defendants, filed an objection to the confirmation of sale had thereunder. Several grounds were set out in the objection; the ones principally relied upon at the hearing, and the only ones brought forward in the motion for new trial, were:

(1) That the property sold for less than it was worth on the market at the time, and that the consideration was insufficient to such an extent as to affect materially the rights of defendants, and that such inadequate price was brought about by reason of certain statements alleged to have been made by the attorney for plaintiffs concerning the title to the property so that prospective bidders were thereby deterred and prevented from bidding at the sale.

(2) That the attorney for plaintiffs at the sale made certain statements intimating that the title was involved, and that such statements were irregular and prejudicial to a proper and valid sale, and caused the property to sell for much less than it was worth, all to the prejudice of defendants' rights.

These questions were properly raised in the motion for new trial, and, in addition, defendants alleged that the judgment of the court was not sustained by sufficient evidence, and is contrary to law. These three questions are presented in the petition in error. Trial was had to the court on the objections, and the court overruled same and confirmed the sale. From this order and the order overruling the motion for new trial, defendants appeal.

It was shown at the trial that the property involved was sold in three tracts or parcels: One lot and a part of another in the town of Lindsay upon which a warehouse was erected, for $1,800; one lot upon which was an old wooden building, for $1,000; and two vacant resident lots, for $250; a total sum of $3,050. All were sold to O. B. Mothersead, Bank Commissioner, who was the then judgment creditor.

F. A. Tinch, one of the defendants, testified, in substance, that he knew the value of the property, and that the warehouse property was worth in his judgment about $3,500; the lot, with old frame house, was worth about $1,500, and the vacant lots about $300; that he was present at a former sale, which was had, and thereafter set aside, and bid $2,000 for the warehouse property, at which price it was sold to him, and he gave a check for that sum with a notation on the corner that it was to be paid on approval of abstract; that he procured an abstract, and had an attorney examine same, who advised him the title was not good, whereupon he declined to take the property.

Witness George E. Alkire testified in behalf of the objecting defendants that he was acquainted with the property in question, was present at a former sale, and bid on the warehouse property; that he did not bid it

**164**

in for the reason that it sold for more money than he thought it was worth under the conditions. He did not testify as to the value of any of the property, or what the warehouse property sold for at the time he bid on it. This was substantially all the testimony given going to the value of the property.

As to the alleged statements made relative to the title by the attorney for plaintiff at the time the sale was had, Mr. Tinch, the objecting defendant, testified:

"Q. Now, state to the court what was said there as near as you can by Mr. Murray, the attorney for the Banking Commissioner, at that time, relative to this sale as to the condition of the title of this property? A. Well, when the property was put up for sale, he made the statement that it would be sold, you might say, without any title, as it had passed down from—as near as I can remember—from Mr. Watkins to the state, and there would be no abstract furnished, and the money would be on the barrel head, as near as I can remember it. Q. Is that what he said and all he said? A. Something similar to that—yes. Q. Do you know whether or not that statement kept persons present from bidding on the property? Mr. Osborn: Objected to as calling for a conclusion of the witness. Which objection is by the court sustained, to which action of the court the defendants except, and which exception is by the court allowed. The Court: If he went there with the intention of bidding, and it kept him from bidding, I think it is admissible as to him."

He also testified that D. T. Boone and Geo. Alkire were both present at the sale, and offered to testify that they were each able to pay for the property in case either of them had bought it at the sale. The court properly sustained an objection to this offer. He did not testify that the statements made by the attorney caused him not to bid on the property at the sale here in question, or caused him to bid less than he would have had the statement not been made. He did bid notwithstanding the statement.

Geo. Alkire testified that he heard the statement of the attorney. His testimony was:

"Q. Can you remember at this time about what he said? A. Well, he made the statement that it was to be sold for cash in hand, without any abstract of title and no guaranty as to the final outcome of it. That was the substance of his statement. Q. Did he say there in that statement—I will ask you to refresh your memory if he did not say something about it was pending in part

in the Supreme Court. A. I don't remember it. Q. You don't remember? A. No. sir."

Cicero I. Murray, the attorney for plaintiff, testified as to the statement made as follows:

"A. My name is Cicero I. Murray. I am attorney for the plaintiff in this case. I attended the sale of the property involved in this action on April 12, 1926, and at the time of the sale I made the statement to the persons present at the sale that the property would be sold for cash in hand, and that no abstract of title would be furnished to the purchaser of the property. He would take the title just as it was. Q. Did you make any other statement relating to the title to the property A. None whatever—none other than just to take the title as it was."

J. C. Tinch, liquidating agent for the Farmers' Exchange Bank, testified relative to the statement as follows:

"As well as I remember your statement, you just merely called attention that this sale was for cash in hand, and that whoever bought it would be buying it just as the title was—there would be no abstract furnished—something to that effect—I don't remember the exact words."

And on cross-examination, as follows:

"Q. Do you recall that he made a statement as to about how the title—how it came —where it came from, and how it was derived? A. No, sir: I don't recall it. Q. You don't remember that he said anything about the same being in the name of a party by the name of Bob Watkins, who is now dead? A. No, I don't remember that."

Upon the evidence, the court made a general finding against the objection, and overruled same and entered an order confirming the sale.

The action of the court was then a finding in effect:

(1) That the statements, alleged to have been made by the attorney for plaintiff, derogatory to or in discredit of the title to the property, were not in fact made.

(2) That the property did not in fact sell for an inadequate price.

These were both questions of fact for the determination of the court on the evidence before him, and we are of the opinion that the evidence on both questions was sufficient to support the findings.

The findings are amply supported by the evidence, even though we may say there is a conflict therein, though it is apparent that

there is but little, if any, conflict in the evidence on either question.

But treating the testimony of the objecting defendant as true, and assuming that the attorney made the statement credited to him by defendant in his testimony, we think it wholly insufficient to vitiate the sale.

The only authority cited by defendant on this proposition is Brady v. Carteret Realty Co. (N. J. Eq.) 6 Atl. 938, and therein the court said:

"It is undoubtedly within the right of a person claiming to have an interest in the land being sold at a judicial sale, whether such person be the judgment creditor or otherwise, to state any facts as to the property about to be sold, when such facts relate to the title, possession, or the alleged right of possession thereof. Such statements can in no sense be deemed inequitable or oppressive or as a slander of the title."

And again:

"But we think that an entirely different rule applies from the one just stated when a judgment creditor, or other party in interest in the land sold, not only stands by or states facts, but expresses an opinion as to the title which injures and prejudices the sale of the interest which the debtor has or which will pass under the conveyance by the sheriff or other officer. To state facts cannot injure; to express an opinion upon the facts, or without stating the facts, may be oppressive and prejudicial. It is certainly inequitable."

What the judgment creditor may not do is stated in the same opinion as follows:

"A judgment creditor will not be permitted to assume to sell real estate and declare, as a conclusion of law, or as an expression of opinion upon facts, that nothing will pass by any conveyance which may be made by the sheriff to the purchaser at the sale. Whether anything passes by a sale and conveyance of real estate at a judicial sale, is a matter in which only the debtor and purchaser are concerned, and they must be allowed to determine that question for themselves from the records, or from facts otherwise stated or ascertained."

It is not only inequitable and unjust, but highly improper for a judgment creditor, while using the process of a court to collect his debt, to avail himself of the occasion of the sale to start a question of title to cheapen, to the prejudice of the judgment debtor, what is proposed to be sold, and where this is done, and the fact is called to the attention of the court, it is the duty of the court to set the sale aside, and particularly is this true, when it appears that after so rais-

ing the question of title, and thereby attempting to cheapen the property about to be sold, the judgment creditor bids the same in himself.

It will be seen at a glance that, if the attorney made the statement credited to him it would not come within the rule above announced. The most that can be said of the statement testified to by Tinch is, that the title, whatever it might be, had passed down from Mr. Watkins to the state, and that there would be no abstract furnished, and that the sale would be for cash. That is, as the witness stated it: "Money on the barrel head."

This was far from expressing an opinion that the title was not good, or anything that could be construed as a slander on the title of the judgment creditors. It is clear that the statement, if made, did not amount to such slander or derogatory statement of title as would vitiate the sale.

The judgment should be affirmed.

BENNETT, HALL, HERR, and JEFFREY, Commissioners, concur.

By the Court: It is so ordered.