KOWLAK v. TENSLEEP MERC. CO.
(No. 1565; Oct. 12, 1929; 281 Pac. 1000)

22

For the defendant and appellant, there was a brief and oral argument by *C. H. Harkins,* of Worland, Wyoming.

For the plaintiff and respondent there was a brief by *C. A. Zaring* of Basin, and *Lin I. Noble* of Thermopolis, and oral argument by *Mr. Zaring.*

Riner, Justice.

This case is before the court by direct appeal from an order of the District Court of Washakie County, sustaining a motion for a new trial. The action was brought by John Kowlak as next friend for Matthew Kowlak, a minor child, plaintiff and respondent—hereinafter generally designated as the "plaintiff"—against Tensleep Mercantile Company, a corporation, defendant and appellant—subsequently designated herein as the "defendant"—to recover for injuries caused by alleged negligence on the part of one of the latter's employees.

Plaintiff's petition, after alleging the corporate existence of the defendant, the fact of its being engaged in the mercantile business and also in operating a gasoline filling station in front of its store building at Tensleep, Wyoming, and that plaintiff and his family were travelling to the mountains above Tensleep, on June 25, 1925, charges that:

"On said day the said John Kowlak stopped his car on the public highway in front of defendant's place of business for the purpose of purchasing gasoline from the defendant with which to fill his car; and the occupants of the car, including said Matthew Kowlak, alighted from the

car and were standing in the public highway near the car, while it was being filled with gasoline by the defendant.

"That the said defendant, while engaged in filling the said car with gasoline from its said filling station, did then and there attempt to handle said gasoline in an open can and that said gasoline became ignited in said can in the hands of one of the defendant's employees; and while so ignited the said defendant, by its employee, wrongfully, negligently and carelessly threw the said burning gasoline upon and against the body of the said Matthew Kowlak, and as a result of the said wrongful, careless and negligent acts of the defendant in throwing said gasoline upon the said child, both legs of the said child, Matthew Kowlak, were horribly burned, maimed and injured."

The remaining portions of the pleading aver the alleged negligent acts to have been done by defendant's employee in the course of his employment and within his authority, and describes and makes claim for the damages alleged to have resulted to Matthew Kowlak in consequence of such negligence. Admitting its corporate existence and the nature of its business, defendant's answer otherwise was a general denial. A jury having been demanded by the defendant, the case proceeded to trial on March 10, 1928, and was concluded on that day. It appears from the record that the jury returned its verdict in favor of the defendant, late in the evening of March 10, 1928, which was on a Saturday and the last secular day of the September 1927 term of court—the March 1928 term commencing on the following Monday, the 12th of that month.

On March 19, and after the term at which the case was tried had closed, but within ten days of the rendition of the verdict of the jury, plaintiff filed his motion for a new trial. March 26th the defendant filed its motion to strike this motion for a new trial from the files, on the ground that it was not made at the term the verdict sought to be set aside was rendered. Thereafter and on June 21, 1928, the trial court denied the motion to strike and entered the order appealed from, sustaining the motion for a new trial.

It is assigned as error, that the defendant's motion to strike should have been sustained, and our attention is directed to Section 5872, Compiled Statutes of Wyoming 1920, which reads:

"The application for a new trial must be made at the term the verdict, report or decision is rendered; and except for the cause of newly discovered evidence, material for the party applying, which he could not, with reasonable diligence, have discovered and produced at the trial, shall be made within ten days after the verdict or decision is rendered, unless such party is unavoidably prevented from filing the same within such time."

The following section of the statutes provides that:

"The application must be by motion, upon written grounds, filed at the time of making the motion."

These provisions of law have been held to be mandatory. Blonde v. Merriam, 21 Wyo. 513, 133 Pac. 1076, and cases cited.

While there is authority under a statute possessing language quite similar to that used in Section 5872, supra, to the effect that the clause "unless such party is unavoidably prevented from filing the same within such time" refers only to the ten day limitation in the statute (see Wobble v. Finch, 33 Ky. L. 588, 110 S. W. 808), yet there are other decisions which declare that the clause referred to attaches also to the requirement of the statute relating to the term. The conclusion these last mentioned decisions adopt touching this matter appeals to us as better calculated to do justice between litigants. See Murten v. Garbe, 93 Nebr. 589, 141 N. W. 146; Schallehn v. Hibbard, 64 Kans. 601, 68 Pac. 61; Riely v. Robertson, 29 Okla. 181, 115 Pac. 877; Gardner v. Blanton, 80 Okla. 143, 194 Pac. 1084, 1086; McKinney v. Swift, 136 Okla. 164, 274 Pac. 659. In Gardner v. Blanton, supra, where the statute provided:

"The application for a new trial must be made at the term the verdict, report, or decision is rendered, and, except for the cause of newly discovered evidence, material for the party applying, which he could not, with reasonable diligence, have discovered and produced at the trial, or impossibility of making a case-made, shall be within three days after the verdict or decision was rendered, unless unavoidably prevented."

The court say:

"The phrase 'unless unavoidably prevented' applies both to the days within which a motion must be filed and the term, and the failure to file the motion within the term can be excused by unavoidable casualty, as well as failure to file within three days. The failure to file a motion for a new trial within three days from the rendition of the verdict or decision, or within the term at which the same was rendered, may be excused by showing that the party was unavoidably prevented from so doing."

The record before us shows, as previously remarked, that the motion for a new trial was filed within ten days after the verdict in the case was rendered. It also shows without dispute that the verdict was rendered between ten and eleven o'clock Saturday night March 10, 1928—the last business day of the September 1927 term of the Washakie County District Court; that the office of the clerk of the court was closed shortly after the verdict was returned, and was not open for the transaction of any business until the following Monday morning, March 12th, which was the first day of the next term of court following the trial. The ten days' time accorded by Section 5872, supra, to the plaintiff within which to file his motion for a new trial, did not commence to run until the last business day of the term had expired. Accordingly we think that the record affirmatively establishes that plaintiff was unavoidably prevented from filing his motion at the term during which the verdict was rendered and that he had ten days thereafter in which to make such filing. Where the record itself does not make

it clear that a party has been unavoidably prevented from filing his motion, either at term or within the ten day limitation, there should be affirmative matter in writing in the motion or accompanying it to bring the party within the exception of the statute—which matter, of course, can be traversed, if the opposing litigant should be so advised. Kent v. Upton, 3 Wyo. 43, 2 Pac. 234, quoting with approval from Odell v. Sargent, 3 Kans. 80. There was no error in overruling defendant's motion to strike.

Concerning plaintiff's motion for a new trial, it is contended that the trial court erred in sustaining it. The essential grounds of that motion were that the verdict was contrary to the evidence in the case and that error was committed by the court in the giving of certain enumerated instructions. Having in mind the specific charge of negligence as quoted above from plaintiff's pleading, the record shows, we think, the facts in the case bearing on that matter to be without dispute substantially as follows:

The plaintiff, with his family, including his minor child Matthew, who was about eleven years of age, accompanied by a Mrs. Baird and her son Freddy, drove up in his auto to the defendant's filling station in Tensleep, Wyoming, and purchased some gasoline for the car. Plaintiff claiming that the gasoline pump incorrectly measured the fluid, the attendant said: "I will prove it to you this is right," to which plaintiff replied: "Alright." The attendant then went into the store, brought out an open gallon can and plaintiff took the hose and filled the can as the employee manipulated the pump. The plaintiff then expressed himself as satisfied that the pump was accurate. Whereupon the attendant carried the open gallon can of gasoline some distance to the filler pipe of the reserve or main tank and started to pour the gasoline into it. Meanwhile the boy, Matthew Kowlak, had left his father's car and approached within three or four feet of the place where the gasoline was being poured into the tank. When about half of the liquid had been emptied from the gallon can into the main

tank, a man came out of the store, pulled a cigarette out of his shirt, lit it and flipped the match toward the attendant engaged in pouring out the gasoline. The gasoline ignited and flared up into the employee's face, burning his eyebrows and hair, scorching his face and burning his hands. He immediately threw the can with the burning fluid from him. As the gasoline ignited, the boy Matthew started to run away from the spot. Though it is not clear from the record exactly how it happened, apparently some of the blazing liquid splashed upon the boy's legs, with the result that he was severely burned. Defendant's employee testified that he did not see the boy around the place and did not see where it went when he let go of the can; that he was not smoking and did not know what caused the gasoline to ignite.

The only negligent act charged against the defendant is the act of its employee in throwing burning gasoline upon the boy Matthew Kowlak. But this act was performed under such conditions, as the facts of the case above recited disclose, that we are convinced the verdict of the jury was not contrary to the evidence but in full accord with it. Especially are we led to this conclusion in view of the authorities presently to be cited.

In 20 R. C. L. p. 29, Sec. 22, it is said:

"Anything which operates to deprive a person of the ability to exercise his intellectual powers and guide his acts thereby will relieve him of an imputation of negligence that otherwise might arise from his conduct. Emergencies or sudden perils illustrate this proposition. The rule judicially stated is that one who in a sudden emergency acts according to his best judgment, or who, because of want of time in which to form a judgment, omits to act in the most judicious manner, is not chargeable with negligence."

Where an employee of an express company, while unloading an express car, was warned of an incoming train approaching close to the track where his truck stood, and that in order to avoid a collision he must move his truck

immediately, and he succeeded in getting the truck upon the platform out of the way of the train but in so doing came in contact with another truck and caused it to roll down so close to the track that it was struck by the train and thrown against plaintiff who was passing upon the platform, holding the expressman free from negligence, the court, in Ransom v. Depot and Express Company, 142 Mo. App. 361, 126 S. W. 785, 786, remarked:

"It is suggested in the evidence that the expressman hesitated for a moment and also that he did not follow the most expeditious course for removing the truck to a place of safety. The suggestions amount to nothing more than an expression of opinion, but if well founded, they afford no ground for an inference of negligence. The expressman was suddenly confronted by a great peril which gave him no time to think. The law imposes no rules of conduct upon one who is compelled to act, not by the dictates of care and reason, but by the instinct of self-preservation."

In Post v. Richardson, 273 Pa. 56, 116 Atl. 531, 532, plaintiff sought to recover for the death of her husband, resulting from a collision between a sled on which he was coasting and the defendant's automobile. The car, with lights lit, chains on wheels and fully under control, ascending the slope on which plaintiff's husband was coasting, turned to the left side of the road in order to pass persons drawing sleds up the hill immediately ahead. As it did so, the defendant saw decedent's sled coming toward him on the same side of the road about 175 feet away. As the two vehicles neared each other—at the speed they were going the gap was closed in less than five seconds—both turned at the same time in the same direction, the auto to the right, the sled to the left, with the resulting collision. Plaintiff appealed from a judgment entered against her *non obstante veredicto*. In affirming the ruling the appellate court said:

"We agree with the learned court below that the circumstances shown establish no negligence on defendant's part. Plaintiff's case would seem to be based on the assumption that vehicles have no right to be on the left side of the highway, but at times they must be there,—no law requiring traffic to move in two undeviating lines. As this regrettable accident was not due to the defendant's failure to exercise care, he cannot be held accountable for it. There was a sudden emergency created in which he acted with the best judgment he could command. 'Negligence cannot be imputed because of the failure to perform a duty so suddenly and unexpectedly arising that there is no opportunity to apprehend the situation and to act according to the exigency.' Eastburn v. United States Express Co., 225 Pa. 33, 73 Atl. 977."

Again in Barnhardt v. American Glycerine Co., 113 Kans. 136, 213 Pac. 663, 665, 31 A. L. R. 721, the facts were that the defendant was engaged in transporting some nitroglycerin in an automobile over the public highway. The auto caught fire without any lack of care on the part of the driver, and after it had passed plaintiff's residence about 800 feet distant there was a steep hill, which the vehicle on fire was unable to climb. The driver abandoned the car and it ran back down the hill and upset. Perhaps a half hour later the nitroglycerin exploded. Plaintiff sued for injuries caused by the shock of the explosion which occurred something over a thousand feet from where she was. A jury rendered a verdict in her favor, finding as the only act of negligence the abandonment of the car on the steep hill without securing it, permitting it to back down the hill and upset. Reversing the judgment entered thereon, the court, after an extended review of authorities, announced its conclusion thus:

"Courts take judicial notice of the highly explosive qualities of nitroglycerin, and that it explodes more readily when heated. Take the case of the driver of this car, loaded with nitroglycerin, on fire through no fault of his, and stuck on a steep hill. The danger of a terrific explosion was immi-

32

nent. There is no showing that he could have put out the fire or prevented the car from running back down the hill, or done any good in any way by staying. Is his act in abandoning the car under these circumstances negligence which will make him or his employer liable for damages? The answer must be in the negative.''

The case of Donahue v. Kelly, 181 Pa. 93, 37 Atl. 186, 187, 59 Am. St. Rep. 632, is in some respects quite similar to that at bar. There the defendant was a proprietor of a restaurant in which a gasoline lamp became improperly ignited. One of his employees, who endeavored to carry it outside, was burned and threw it, thereby causing it to explode and injure the plaintiff. The latter appealed from a judgment of nonsuit against him. In affirming the judgment the Supreme Court of Pennsylvania, in the course of its opinion, used this language:

''The principles which control the judicial contemplation of such an act are extremely simple, and thoroughly well settled. The testimony, all of which was introduced by the plaintiff, clearly shows that the act of the employe who threw the lamp was done at a moment when he himself was in flames, and as an indispensable and urgent act of self-preservation. He was endeavoring to remove the lamp from the room,—an entirely proper and commendable action. To do this, he had taken it in his hands, and was proceeding towards the door, when the flames emitted from the burning fluid attacked him, and threatened him with most serious, and possibly fatal, results. To escape from this calamity, he instinctively threw the lamp from him, but not until he was severely burned. Such an act, done in such extreme circumstances, is not to be adjudged by the rules which are applicable ordinarily to acts done in cool blood, with time and opportunity for the party to consider the consequences and the methods of the act he is about to do. The decisions of this and other courts are very numerous, and in application of the principle to cases in which persons suddenly placed in positions of peril and impending danger do things which ordinarily would be acts of negligence. The same principle applies where innocent third persons sustain injuries from acts done in similar circumstances. The doctrine is well expressed in Pollock

on Torts (Ed. 1887, star page 149), thus: 'As to injuries received by an innocent third person from an act done in self defense, they must be dealt with on the same principle as accidental harm proceeding from any other act lawful in itself. It has to be considered, however, that a man repelling imminent danger cannot be expected to use as much care as he would if he had time to act deliberately.' * * * When Claggett, in his effort to remove the lamp, discovered that he was himself in flames, and therefore cast it from him, towards the door, his act must be regarded as being done upon a sudden and unexpected emergency, subjecting him to imminent peril. He had no time to consider what was best to be done, or how he could best avoid doing injury to others. His instinct of self-preservation prompted him to cast from him the implement which threatened his life, and for so doing he is not to be charged with an act of negligence as to others.''

When the gasoline flamed up into the face of the attendant and burned him, in the case at bar, his act in throwing the can of burning liquid from him was instinctive, an act of self-preservation, and we do not think his conduct in that respect can be considered, under the circumstances shown, as negligent. There are decisions which hold that if an emergency is brought on by the negligence of one, who seeks to excuse his act by reason of the emergency, it will not excuse him. These cases are not pertinent here, for no act of negligence is charged against the defendant except the one of throwing the burning gasoline on the boy.

Something was said at the hearing to the effect that certain instructions given by the trial court were erroneous, because defendant's employee was negligent in handling the gasoline as he did in an open can. There are several answers to this suggestion. First, it is nowhere in plaintiff's petition alleged that such conduct constituted negligence, and secondly, no authorities have been called to our attention which declare that it is negligence *per se* to handle gasoline in an open receptacle in the manner shown by this record. Nor have we been able to find any. The accident occurred while the attendant was pouring the gasoline into

the main tank. Under the facts of the case, the same trouble could very well have occurred if the attendant had used a closed vessel, as he must have poured the gasoline from that sort of a container also in order to get it into the main tank. We have carefully examined the instructions and the evidence in this case and are of the opinion that the evidence supports the verdict rendered by the jury, and that the instructions were not erroneous in view of the pleadings and proof, and that a proper judgment was entered below, and should be allowed to stand.

While we recognize the rules that the granting or refusing of a motion for a new trial rests in the sound legal discretion of the trial court, and that a much stronger case for reversal is required where a new trial has been granted by the District Court than where one has been refused (McDaniel v. Hoblit, 34 Wyo. 509, 245 Pac. 295; Barrett v. Oakley, (Wyo.) 278 Pac. 538), nevertheless, in the language of the reviewing court in Sovereign Camp, Woodman of the World v. Thiebaud, 65 Kans. 332, 69 Pac. 348, 349.

"These rules cannot be taken as authorizing the trial court arbitrarily to set aside verdicts and grant new trials without reason. A lawsuit is an orderly proceeding. Its conduct is regulated by certain well-defined rules. The judge is as much bound by these rules as is the jury. He may not, without committing error, set aside a verdict regularly obtained, without legal reason therefor; and where, as in this case, there is no conflicting evidence, and it all points unmistakably to but one conclusion, so as to leave no room for any reasonable inference except the one arrived at by the jury, there appears no legal reason why the verdict should be set aside, and the parties put to the trouble and expense of another trial. 'It is the interest of the public that there should be an end to litigation, and a court is not compelled to grant a new trial even if all the parties request it; but, where there are no grounds for a new trial, in the interest of an end to litigation no new trial should be granted.' Railroad Co. v. Brown, 51 Kan. 6, 32 Pac. 630; Lindh v. Crowley, 29 Kan. 756. The discretion of district courts in the matter of granting or refusing new trials

is a legal, not a capricious, one. It must be warranted by law, and guided by established precedent. It may not be exercised simply because the judge might wish the verdict to be otherwise. The tests and warrant for its use is, has the applicant therefor shown a legal reason for its existence? The saying that it takes 13 to render a verdict has passed to an adage, but can mean nothing more than that, in cases where conflicting evidence raises a substantial and serious doubt in the mind of the trial judge of the correctness of the conclusion arrived at by the jury, he may interfere; but where, as in the case at bar, no such doubt could arise on the evidence, and no suggestion is made that there exists other evidence which would tend in the least to change the view taken by the jury, the setting aside of the verdict and the granting of a new trial is an unwarranted exercise of the court's power. 2 Graham & W. New Trials, p. 46; Gold v. Ives, 29 Conn. 123.''

See also 2 R. C. L. 217, Sec. 182; 2 C. J. 833, 834; Strode v. Strode, 194 Ky. 665, 240 S. W. 368, 27 A. L. R. 313; Badboy v. Brown, 66 Mont. 307, 213 Pac. 246; Snyder v. Guthrie, 193 Iowa 624, 187 N. W. 953, 24 A. L. R. 950; Oconto etc. Co. v. Cayonette, 138 Wisc. 664, 120 N. W. 497.

Being unable to find any legally sufficient or substantial reason why the motion for a new trial was granted, the order allowing it is reversed, with instructions to reinstate the judgment entered upon the verdict.

*Reversed.*

BLUME, C. J., and KIMBALL, J., concur.