## JACKSON v. W. A. NORRIS, INC.

(No. 2108; August 22, 1939; 93 Pac. (2d) 498)

404

For the appellant, there was a brief by *George F. Guy* and *Philip White* of Cheyenne, and oral argument by *Mr. Guy*.

For the respondent, there was a brief and oral argument by *Edwin V. Magagna* of Rock Springs, Wyoming.

RINER, Chief Justice.

The plaintiff and respondent, Jackson, obtained a judgment, entered upon the verdict of a jury, in his favor in the District Court of Laramie County, and against the defendant and appellant, W. A. Norris, Inc. The parties will usually be referred to hereinafter as "plaintiff" and "defendant," as aligned in the District Court. The litigation grew out of an automobile collision between two motor vehicles, the one owned and driven by the plaintiff, the other a truck owned by the defendant and operated by one of its employees. The essential facts are not greatly in dispute, and would seem to be as follows:

The defendant is a corporation organized under Wyoming law, and was on August 21st, 1937, engaged in highway construction work under a contract be-

tween it and the State of Wyoming throught the State Highway Department, for "base course surfacing and oil treatment" of some 28 miles of the Pinedale-Rock Springs public highway. The defendant had established a construction camp about 15 miles south of Pinedale not far from a bridge over the East Fork of Green River. The accident presently to be mentioned happened approximately 3½ miles in a southerly direction from this bridge on the highway aforementioned. The entire highway from Pinedale to Rock Springs was at the time open to the public for traffic. But there appear to have been numerous special signs indicating construction work on the highway northerly towards Pinedale from the bridge aforesaid. However, between this bridge and place where the accident occurred there were none of them.

Involved in the construction thus contracted for was a requirement that the road-bed of the highway should be sprinkled with water. About ten o'clock in the evening of the date last mentioned the defendant's truck, which carried water in a tank affixed thereto, was driven to the point on the highway referred to above. The truck was turned around at this point, and one, Jaycox, the driver thereof, went around behind it to turn on the water through the spray bar. At this time the truck was admittedly on the westerly, or wrong, side of the highway from the standpoint of one motoring southerly thereon. This was necessary, the driver of the truck stated in his testimony, so "We could get closer to the shoulder of the road." In the truck's cab at this time was another of the defendant's employees, Don Sample, who had accompanied the driver on this trip to "see what was going on," and who remained in the cab of the truck until after the accident. As to whether the truck's lights were in use then, the testimony in the record is in conflict. The plaintiff and several of his witnesses state they were not, while some

of the defendant's witnesses, including the driver of the truck, maintained they were, and so testified. While the truck driver was turning his vehicle around he noticed automobile lights approaching on the highway from the north and about a mile away, but evidently paid no further attention to the matter.

Plaintiff, a salesman of automobile supplies, on the night in question was driving his motor car from Pinedale southerly along the highway aforesaid, his destination being Rock Springs. When he reached the point on the highway already mentioned as $3\frac{1}{2}$ miles southerly from the bridge aforesaid, his car collided with the sprinkling truck of the defendant. According to plaintiff's testimony, it appears that plaintiff was driving between 40 and 50 miles per hour when he came over a knoll approximately 200 or 220 feet from the truck, when he saw it for the first time; that he could not then tell whether the truck was or was not moving; that there were no lights or flares by which to tell it was there; that he pulled his car to the extreme right of the road and "in fact started to go off into the barrow pit and then pulled back into the road"; that the collision then immediately took place "head on"; that he had previously made an attempt to stop and did not know how fast he was moving when he struck the truck. Plaintiff's car lights seem to have been in operation at all times before the collision occurred. Plaintiff sustained some personal injuries and both the vehicles were damaged, his automobile considerably and the truck not so much, but no questions arise here concerning these matters.

Other facts and testimony will be subsequently mentioned as may be deemed necessary to a complete understanding of the situation presented.

Plaintiff's petition in the case charges the defendant with negligence in that the latter had "carelessly and negligently stopped said truck in the dark, without

headlights burning, on the left of the center of said highway, and permitted said truck to stand on said main highway to the left of the center of said highway on that part of the highway normally used by cars going in a southerly direction, without using any care or caution, or adopting any means to indicate the presence of said truck on said highway and failed to fix or place, or cause to be fixed or placed, at or reasonably near the location of said truck any light or warning device to warn persons using said highway of the presence of said truck."

A general denial, contributory negligence on plaintiff's part in the matter of speed and in not having his vehicle under proper control despite due warning that the road was under construction, the "last clear chance" rule, and the fact that the construction was under the supervision of State authority, were the defenses interposed by defendant's answer. The new matter in the answer was put in issue by plaintiff's reply.

The cause was tried to the court and a jury with the result hereinbefore indicated.

Section 72-203, W. R. S., 1931, contains among others the following provisions:

"No person shall operate a motor vehicle on any public highway outside of a city or town at a speed greater than is reasonable and proper having due regard for other traffic and the intended use and condition of the road, nor at a rate of speed such as to endanger the life or limb of any person or animal. A speed in excess of thirty-five miles per hour shall be prima facie evidence of failure to operate a motor vehicle at a speed that is reasonable and proper; * * * Every person shall at all times have the motor vehicle operated by him under absolute control." * * *

Section 72-206, W. R. S., 1931, as amended by Chapter 71, Session Laws of Wyoming, 1933, has in part these provisions with regard to lights on vehicles op-

erated upon the public highways of this State during the period "from a half hour after sunset to a half hour before sunrise":

"Whenever a vehicle is parked or stopped upon a highway whether attended or unattended during the times mentioned in this section, there shall be displayed upon such vehicle one or more lamps one of which shall be on the roadway side and project a white light visible under normal atmospheric conditions from a distance of five hundred (500) feet to the front of such vehicle and one of which lamps shall project a red light visible under like conditions from a distance of five hundred feet to the rear," * * *.

"The word 'vehicle' when used in this section shall mean every device in, upon or by which any person or property is or may be transported or drawn upon any highway, except devices moved by human power or used exclusively upon stationary rails or tracks."

The contentions of the defendant advanced to obtain a reversal of the judgment of the District Court are briefly: (1) That the proximate cause of the accident was plaintiff's alleged contributory negligence in driving over a highway under construction after dark at a speed in violation of the statutory provisions aforesaid despite obvious road conditions and warning signs; (2) that defendant's legal status as a highway construction contractor was improperly defined by the Trial Court, and (3) that the District Court incorrectly refused to entertain defendant's theory that plaintiff had the "last clear chance" to avoid the accident.

In connection with these contentions may properly be considered the legal principles announced by the following comparatively recent cases, which it will be of assistance to now briefly review:

Long vs. American Employers' Ins. Co., 148 Kan. 520, 83 Pac. (2nd) 674, was an action for injuries sustained by a truck driver in a night-time collision with the rear of another truck parked without lights or flares, though it had reflectors at the rear corners and

had its left rear wheels only about 2½ feet on the pavement at a point about 100 feet from the crest of a small hill over which the truck had been driven, where another truck was approaching from the opposite direction at the time of the collision. Holding that whether the truck driver was contributorily negligent was under these circumstances a question for the jury, the Court expressed its conclusions in part in this language:

"The standing truck should have had lights on it, and flares should have been put out. Naturally, plaintiff would anticipate that if a truck were standing on the paved highway it would have lights, and flares would be put out." * * *

"Counsel for appellant argue that in any event plaintiff, when he saw the transport, could have turned to the left and avoided striking it, and it is pointed out that the left rear wheel of the transport was only 2½ feet on the pavement, and that there was but little, if any, hangover past the wheel; and it is argued that it would have taken but a slight turn to the left to have enabled plaintiff to avoid it. This again presents a factual situation. When plaintiff first saw the transport he was 30 to 40 feet from it, about the length, or one and a third times the length, of his truck. There was an oncoming truck. He did turn to the left and got the tractor of his truck past the corner of the transport, but did not succeed in getting his entire truck far enough to the left. Appellant's argument on this point partakes somewhat of the doctrine of the last clear chance. It cannot be said, as a matter of law, that plaintiff had a clear chance, under the circumstances, to avoid the transport negligently left standing on the pavement, without lights, and without flares.

"On the whole it seems clear to us that the question of plaintiff's contributory negligence was for the jury."

In Nichols vs. Watson, 119 Conn. 637, 178 Atl. 427, it was held that a truck left standing on the highway at night without lights was being operated in violation of statute and that this constituted negligence per se,

whether regarded as stopped momentarily or as standing on the highway, and the Court remarked:

"The trial court found that the defendant's truck was standing on the highway without lights either forward or rear; it did not state how long the truck had been standing without lights. * * * In any event, it was being operated in violation of the statute. This was negligence in and of itself. Murphy v. Adams, 99 Conn. 632, 639, 122 A. 398. Whether or not it was a substantial factor in causing the injuries to the plaintiff was, upon all the circumstances of the case, a question of fact for the trial court; and its finding that the negligence of the operator was a substantial factor in producing the plaintiff's injuries is final."

Said the Court in Jacobs vs. Moniz, 288 Mass. 102, 192 N. R. 515, an automobile collision case, where plaintiff was injured and his auto damaged through colliding with the rear of defendant's unlighted truck headed in the same direction as the automobile, and which had been stopped in the night-time on the right hand side of the highway while the defendant was repairing a blown-out tire:

"Whether the conduct of the plaintiff in the matter of using care in the operation of his automobile was legally a contributing cause of the collision depends upon whether according to the usual experience of mankind that result or a result of that character was one which ought to have been foreseen. 'One is bound to anticipate and provide against what usually happens and what is likely to happen, but is not bound in like manner to guard against what is unusual and unlikely to happen, or what, as is sometimes said, is only remotely and slightly probable.' Falk v. Finkelman, 268 Mass. 524, 527, 168 N. E. 89, 90; Renaud v. New England Transportation Co. (Mass.) 189 N. E. 789. Whether it was likely or unlikely according to the usual experience of mankind that there should be at the time and place of the accident a motor vehicle, unlighted contrary to the statutory requirement, and stopped on a hill wholly in the concrete lane where the plaintiff was travelling, was in all the circumstances

here appearing a question for decision by the jury. Woolner v. Perry, supra, 265 Mass. 74, 163 N. E. 750; McTighe v. Union Freight Railroad Co., 274 Mass. 312, 174 N. E. 675; Hoxie v. Bardwell, supra, 287 Mass. 121, 191 N. E. 640. We do not think it could have properly been ruled as matter of law that negligence of the plaintiff contributed to cause the collision."

The facts in Newell Contracting Co. vs. Berry, 223 Ala. 111, 134 So. 868, were substantially: The plaintiff, while approaching the City of Florence from the north at night on a public road known as the "Jackson Highway," collided with the defendant's truck which had been left thereon, as it was claimed, without lights, and suffered injuries. The negligence asserted was:

"The violation of the statute requiring that a vehicle parked upon a highway whether attended or unattended during the period from a half hour after sunset to a half hour before sunrise shall have displayed thereon one or more lamps projecting a white light in front and a red light in the rear."

Plaintiff prevailed upon the submission of the cause to a jury. Affirming the judgment the court said:

"It is settled by the decisions of this court that the violation of a statute is negligence per se, and that one proximately injured thereby may recover therefor against the violator of the law. Watts v. Montgomery Traction Co., 175 Ala. 102, 57 So. 471.
"The trial court correctly so stated in his oral charge, and there is no merit in the exception reserved thereto.
"The evidence as to the location of the truck on the roadway and as to whether or not there were lights displayed thereon was in sharp conflict, and the court properly submitted the issue of the alleged negligence for the jury's determination. The affirmative charge was properly refused."

More than 30 minutes after sunset, one, Duclos, traveling westerly on a highway, stopped his heavy motor truck on that part of the roadway to the right of its center as used by vehicles traveling westerly, and left

it standing there without displaying any lights. The driver of a light truck, Chaffee by name, was driving towards the heavier truck on this highway from the southeast. He was traveling on the right side of the road but of course on the same side of the road on which the truck first mentioned was located. The light-weight truck was equipped with lighted headlights as prescribed by law and was traveling about 25 miles per hour and could have stopped in from 20 to 25 feet. He did not see the heavier vehicle until about 20 feet from it, when in an effort to avoid a collision he turned sharply to the left. His effort was unsuccessful and a collision ensued producing injuries to his truck, for which he brought suit and obtained a judgment upon the verdict of a jury. The contention of the plaintiff in this litigation, as stated by the court in Chaffee vs. Duclos, 105 Vt. 384, 166 Atl. 2, was:

"He claims that, since the lights on the plaintiff's truck were legal and legally sufficient, the latter should have seen the defendant's truck when he was at least one hundred feet therefrom; and as a matter of law he was guilty of contributory negligence in failing to see it in time to avoid the collision."

Affirming the judgment, however, the court said in the course of its disposal of the case:

"While the general rule that the driver of an automobile is as matter of law guilty of negligence in driving at such a rate of speed as prevents stopping within time to avoid an obstruction within the range of his vision is supported by reason and the weight of authority, it is not a hard and fast rule that must be invariably applied in every case. Such application, it is said in Kaufman v. Hegeman Transfer & Literage Terminal, 100 Conn. 114, 118, 123 A. 16, 17, 'would force the traveler to assume that the highway was liable to be obstructed, and in view of this to so travel that he should not collide with any obstruction in the highway, however negligently it may have been maintained upon it. It would thus impose upon the traveler the exercise

of extraordinary care instead of ordinary care under the circumstances.' * * *

"The defendant's motion for a directed verdict is based upon the single proposition that the plaintiff was guilty of contributory negligence as matter of law in operating his truck at such a rate of speed that he could not stop it in the space included in his vision ahead of him. The proposition is based upon the assumption of fact that the plaintiff could not stop his truck in the space of his vision. The defendant takes the distance the plaintiff saw the truck ahead of him about twenty feet. He leaves out of the proposition the distance ahead the plaintiff could have seen had the defendant displayed a light with which to warn approaching travelers. There was evidence from which the jury could infer that such distance was not less than one hundred feet, and, if such warning had been given, the plaintiff could have stopped in time to avoid a collision. The plaintiff had the right to assume that the highway was open to public travel, and that the defendant would observe the law of the road (Nos. 79 and 80, Acts of 1931) and would not leave his unlighted truck standing on the traveled part of the highway, and he might proceed on this assumption until, in the exercise of the care of a prudent man, he saw or ought to have seen that it was unwarranted."

Another case also in many respects analogous to that at bar is Miller vs. Burch, 254 Ill. App. 387. There it appeared that the defendant, Burch, stopped his automobile on the west, or left hand side of the center of a street in the City of Rockford, facing north. Another car facing south was between his car and the curb. Whether his car carried lights was in dispute. While Burch's auto was thus located, Miller, in his motor vehicle, driving south on the west side of the street at a speed of 15 to 25 miles per hour, collided with defendant's car. The lights on the Miller car were on but dimmed, and according to his own testimony did not light the road more than about 3 feet in front of the car and were of no assistance to him in distinguishing objects farther away than that. Miller sued Burch for

the resultant damage to the former's auto and recovered judgment. The defendant, on appeal, claimed that plaintiff was guilty of contributory negligence as a matter of law and that the trial court should have directed a verdict against him. But the appellate court held otherwise, saying:

"It is conceded the defendant was negligent in parking his car where he did, and it must be conceded that his negligence was aggravated if, as claimed by the plaintiff, he stood there without displaying any lights.

"If we understand the defendant's position, it is that he is not liable, regardless of his own negligence, not because it is not actionable negligence, but because the plaintiff was guilty of negligence, and his negligence proximately contributed to the collision which caused his damage.

"The defendant stresses the fact that plaintiff was running with lights that did not aid him in distinguishing objects more than 3 feet ahead of the car. He also asserts that the Motor Vehicle Law required plaintiff to have much stronger lights. From these facts he concludes that plaintiff was guilty of negligence as a matter of law, and avers that such negligence contributed proximately to the collision from which his damages resulted.

"It is quite true that plaintiff's lights, as he used them, would only serve as a warning to persons fronting him to get out of his way, but could be of no service to him in seeing persons or objects in front of him in time to avoid striking them. So far as being any assistance to plaintiff in that respect, they might as well have been turned entirely off. They were not out, however, for defendant says: 'He (meaning plaintiff) had his headlights on. I noticed him at the intersection.'

"This brings us to a consideration of whether defendant's conclusion that plaintiff was guilty of negligence as a matter of law is a correct one, basing his conclusion, as he does, on the single fact that plaintiff was running with his lights on dim.

"Whatever the rule in other States may be, the rule supported by the weight of authority in Illinois is that the violation of an ordinance or a statute by acts, either

of commission or omission, is only prima facie evidence of negligence."

After reviewing a number of authorities, the court further remarked:

"Applying the above to the instant case, plaintiff was driving along a street at an hour and at a place where standing vehicles were not to be expected, on the path he was supposed to be, and in which he was driving. There is evidence that there were no lights on defendant's car. There was a light at the intersection, but the street was dark near defendant's car. These, and other circumstances heretofore mentioned, and that might be mentioned, persuade us that all reasonable minds would not agree that the conduct of plaintiff constituted negligence. So the question of negligence should be treated as one of fact for the jury.

"Whether the place where plaintiff was driving, and had a right to drive, was a safe place to drive with such dim lights, but for the negligence of the defendant in being where he had no right to be.

"In short, whether under all the conditions and circumstances surrounding plaintiff as he proceeded south on Court Street, his conduct was 'so violative of all rational standards of conduct applicable to persons in a like situation' that all reasonable minds would conclude that he was negligent. If it was not, then, although he may have been negligent as a matter of fact, he could not properly be said to be negligent as a matter of law. Hence the jury was properly permitted to pass on that question of fact, and if the jury had a basis in the evidence for finding that the conduct of the plaintiff did not constitute negligence then, in such case, no one would contend there could be such a thing as negligent contribution to the cause of the injury, negligence of plaintiff having been eliminated.

"On the other hand, should the jury find the conduct of plaintiff did amount to negligence, it would still have to find whether that negligence proximately contributed to the collision which caused the damages."

In the case at bar the highway, though rough in some places, was left open for night traffic on the part of the general public. The defendant's truck was on the wrong

side of the highway. It was after darkness had fallen when the accident happened. The testimony as to whether the sprinkling truck's lights were on or not is in hopeless conflict, and that being so, the verdict of the jury, as concerns this court, settled that point against the defendant. We must accordingly conclude that the truck's lights were not lit.

As regards warning signs, the testimony seems to be undisputed that for 3½ miles beyond the East Fork bridge aforesaid there were no warning signs of any sort whatsoever. Although the truck driver saw the lights of an auto approaching from the north, he did nothing to warn concerning the unusual situation in which his own vehicle was then placed, viz: on the wrong side of the road. The determination of whether the accident would have occurred if plaintiff had not been driving so rapidly was specifically submitted to the jury under instructions, concerning which no question is now raised, and that body has resolved this matter in plaintiff's favor.

Under all the circumstances of the case, and having the authorities previously outlined as above in mind, we are unable to say that as a matter of law the court was mistaken in submitting the cause to the jury. We are unable to perceive, as urged by the defendant, that "All of the evidence in the case shows that the real proximate cause of the accident was the contributory negligence of the plaintiff."

We hardly think it so, either, that the plaintiff has ground for complaint that the district court failed to "properly define the appellant's legal status and its right to occupy the roadway as a highway construction contractor." The jury were told that:

"A road contractor is governed by the ordinary rules of negligence. In reaching a determination on the ques-

tion of negligence, you should take into account all the circumstances shown in evidence in this case."

and also that:

"A road contractor must exercise reasonable care to avoid injury to the traveling public."

In Palmer vs. Marceille, 106 Vt. 500, 175 Atl. 31, the court said:

"In Downes vs. Town of Hopkinton, 67 N. H. 456, 40 A. 433, the opinion states that if a highway surveyor is guilty of negligence in failing to give reasonable notice of a blast to the plaintiff, she has a remedy, if injured thereby, in an action against him, although the town would not be liable for his negligence. See, also, dictum in Butterfield v. City of Boston, 148 Mass. 544, § 545, 20 N. E. 113, 2 L. R. A. 447, and cases cited in annotation 40 A. L. R. 1358. Inferentially the doctrine is recognized in Battey v. Town of Duxbury, 23 Vt. 714, 719. We conclude that the fourth ground of the motion is without a merit."

In Brenton vs. Colbert, 305 Pa. 277, it was held that a truck driver's negligence which injured a motorist was not excusable because the former was engaged in work on a public highway, the court saying:

"The evidence shows defendant's employee, while engaged in the business of his employer, failed to use the reasonable care the circumstances demanded of him, as the verdict indicates; consequently his negligence is not excusable because he, at the time, was engaged in work on a public highway. Under such circumstances, those engaged in the construction work as well as travelers on the highway are required to exercise more, rather than less, than ordinary caution.

"The question of the driver's negligence and also the contributory negligence of plaintiff were both for the jury, and were fairly submitted by the trial judge."

So far as the "last clear chance" doctrine, it is our view that it is not applicable here, or if it was, the determination of the jury on the issue of contributory

negligence settled it against the defendant. We are inclined to think that it might very well be reasonably inferred by the jury from plaintiff's testimony, which they evidently believed, that he was totally unable to locate the position of the truck on the roadway until it was too late to avoid a collision. Plaintiff said that he, "pulled close to the extreme right of the road, and in fact started to go off into the barrow pit and then pulled back into the road." It would rather seem that the situation presented was one covered by the rule adopted by this court in Kowlak vs. Tensleep Mercantile Co., 41 Wyo. 20, 281 Pac. 1000, and Wells vs. McKenzie, 50 Wyo. 412, 62 Pac. (2nd) 305, to the effect that:

"One who in a sudden emergency acts according to his best judgment, or who, because of want of time in which to form a judgment, omits to act in the most judicious manner, is not chargeable with negligence."

The judgment of the District Court of Laramie County will accordingly be affirmed.

*Affirmed.*

KIMBALL, J., and BURGESS, D. J., concur.