**TRI–STATE OIL TOOL INDUSTRIES, INC., Appellant (Plaintiff below),**

v.

**EMC ENERGIES, INC., Appellee (One of Defendants and Cross-Complainant [Third-Party Plaintiff] below).**

No. 4660.

Supreme Court of Wyoming.

March 22, 1977.

David A. Scott, Murane, Bostwick, McDaniel, Scott, Greenlee & Owens, Casper, for appellant.

Ronald W. Hofer and David B. Park, Casper, for appellee.

Before GUTHRIE, C. J., and McCLIN-TOCK, RAPER, THOMAS and ROSE, JJ.

ROSE, Justice.

Tri-State Oil Tool Industries, Inc., herein referred to as Tri-State, appeals a decision of the District Court of Campbell County granting a summary judgment by which it was denied foreclosure of its materialman's lien against the properties of the appellee, EMC Energies, Inc., spoken of herein as EMC.

During the early part of 1974 EMC hired Grebe Drilling Company to drill an oil well on a leasehold owned by EMC in the Dead Horse Field, Campbell County, Wyoming. Grebe Drilling in turn hired Tri-State, an oil field service company to do the actual drilling on the lease. After the drilling services had been performed, Tri-State encountered difficulty in recovering payment from Grebe Drilling. After a series of unsuccessful meetings with a representative of that company, Tri-State filed a materialman's lien on the EMC properties on October 17, 1974. Two days later the credit manager of Tri-State, Mr. Chavanne, met with several creditors of Grebe Drilling and with Carl Grebe, its president, in Oklahoma City, Oklahoma. Following that conference Grebe signed a corporate note as president of Grebe Drilling, promising to pay monies due and owing Tri-State, of which the amounts claimed for the EMC work were only a part.

Subsequently, on October 30, 1974, Grebe gave Tri-State a personal guaranty of this corporate note in the form of a document titled "Guaranty Agreement." This instrument does not bear the acknowledgement or acceptance of Tri-State. After one payment on the note had been made Grebe became delinquent, and, following several unsuccessful demands for payment, Tri-State filed suit in the Campbell County District Court against Grebe Drilling Co., Inc., and Carl E. Grebe on an open account, and against EMC to have its materialman's lien foreclosed. A ▪ ▪ney judgment was

entered against Grebe Drilling Company, which was not appealed, and judgment was also entered dismissing the plaintiff's action to foreclose appellant's lien against EMC. This latter holding is the part of the judgment from which appeal is taken to this court.

Both Tri-State and EMC filed motions for summary judgment on the issue of the lien controversy and, after argument, the district court granted EMC's motion and entered judgment holding that the acceptance by Tri-State of the corporate note and personal guaranty of all debts due and owing resulted in a novation and had the effect of extinguishing its lien claim against the property of EMC.

In its brief, appellant Tri-State defines the issues for decision as follows:

"The basic issue of the case was whether or not the acceptance by Tri-State of the note executed by Grebe Drilling Co., Inc. and the guaranty agreement executed by Carl E. Grebe constituted a novation of the debt due Tri-State by Grebe Drilling Co., Inc., and if there was a novation of said debt, whether or not Tri-State waived its right to foreclose its lien."

In urging that there was no novation, Tri-State argues:

"1. EMC failed to sustain its burden of proving a contract of novation.

"2. That the evidence considered by the trial court shows as a matter of law that the note and guaranty in question were accepted by Tri-State as additional or collateral security."

We find the evidence to be compelling to the conclusion that there was indeed no novation, the note and guaranty in question having been taken by Tri-State, as an accommodation to Grebe and as additional security only, with no intention on the part of either party to extinguish Tri-State's materialman's lien.

The judgment of the trial court is reversed.

▪▪▪ A novation is a mutual agreement between all parties concerned to discharge a

valid existing obligation by substitution of a new valid obligation of the debtor. *Scott v. Wyo. Oils, Inc.,* 52 Wyo. 433, 75 P.2d 764 (1938). The essentials necessary to prove a novation are: (1) a previous valid obligation; (2) agreement of all parties to a new contract; (3) extinguishment of the old contract; and (4) validity of a new contract. *Scott* supra; 66 C.J.S. Novation § 3, p. 683. A novation is never to be presumed. All the required elements must be proved (58 Am.Jur.2d, Novation, § 32, p. 542), and unless it is the clear intention of all the parties concerned to extinguish the old obligation by substitution of the new one, a novation has not been effected. *Davenport v. Dickson,* 211 Kan. 306, 507 P.2d 301, 305, 58 Am.Jur.2d, Novation, § 20, p. 534.

■ Notwithstanding its other provisions, the "Guaranty Agreement" provides that Tri-State's lien rights are preserved and acknowledged to be enforceable. This, in and of itself, is certain proof the parties did not intend that Tri-State would sacrifice existing lien rights in exchange for rights acquired through the note and the guaranty document.

The only testimony given was that of Mr. Chavanne, Tri-State's credit manager, who testified by deposition that at the October 1974 credit meeting Mr. Grebe offered his note and personal guaranty for all outstanding Grebe Drilling Co., Inc.'s debts. No release of Tri-State's lien was requested or given. Chavanne testified that he told Grebe at that time that if the first two payments on the note were not made as scheduled, Tri-State would still have time to foreclose its EMC lien and fully intended to do so. On this issue, Mr. Chavanne responded to interrogation as follows:

"Q. Well, did you as credit manager for Tri-State enter into any agreement with Mr. Grebe at this meeting?

"A. All right. Well, prior to this meeting I had filed my lien, which covered this Campbell County lease, and I brought it to the meeting with me, and when he offered me this note, corporate note, and his personal guaranty, when he offered it, he offered it to each creditor.

He was going to break down on a percentage basis how each of us were going to be paid at different dates. So I told him at this meeting, I said, well, *I have got my lien filed, and it is of record, and I have got six months before I have to foreclose on it. Ant* [sic] *there will be two installments due on this note that you are going to offer us before this period expires. So, I said, let's just see if you perform, I said, if you don't, we fully intend to foreclose on our lien.* [Emphasis supplied]

"Q. At this meeting did Mr. Grebe ask any of the creditors to give up any secured rights they may have had at that time?

"A. No.

"Q. Did he ask you whether or not you would give him a release of the lien?

"A. No, sir."

Based on these uncontradicted facts and testimony, it seems indisputable that neither Tri-State nor Grebe intended the note and guaranty document to be an extinguishment of the lien, but, at most, considered them to be an accommodation to Grebe and Grebe Drilling, as well as additional collateral for a debt due and owing, and were executed for the further purpose of reestablishing a good business relationship between Tri-State and the Grebe organization. Without fulfillment of the essential element of extinguishment there could be no novation. *Scott,* supra.

Appellee-EMC argues that since the "Guaranty Agreement" recites in its preamble that Grebe Drilling Company desires to "settle such accounts with notes or other evidence of indebtedness and to extend the time of payment of such accounts", this clause, therefore, describes the parties' intent to extinguish the lien and substitute a new relationship.

We cannot agree. In the first place, the document signed by Carl E. Grebe personally is unilateral in nature and not executed by Tri-State. We are further mindful of the obligation of EMC to prove the novation by pointing to substantial credible evi-

dence to the effect that it was the clear intent of both affected parties to the original debtor-creditor relationship that the old debt be extinguished and a new one created. *Scott,* supra. We are unable to conclude that a "Guaranty Agreement" which, in addition to containing the last recited language, also provides,

". . . but nothing herein shall preclude TRI–STATE from obtaining and enforcing any liens, privilege or security therefor. . . .",

can be relied upon by him who seeks to prove the lien extinguished and a new contract substituted. The heavy proof burden is simply not discharged, as it must be if EMC is to prevail upon the novation concept. *Scott,* supra.

■ The failure to discharge the burden of proof, in these circumstances, is so clear that the issue may be resolved as a matter of law. In so deciding, we do not substitute our judgment for that of the trial court on a question of fact. That is not our office, as we have reiterated on occasions too numerous to mention. There is no conflict of fact here.

The rules by which we are bound are summarized in *Bluejacket v. Carney,* Wyo., 550 P.2d 494, 497, where we said:

"When we review on appeal the denial or grant of a summary judgment, we must look at the record from a viewpoint most favorable to the party opposing the motion. *Poller v. Columbia Broadcasting System,* 1962, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458, 464. The inferences to be drawn from the facts contained in the affidavits, exhibits and depositions must be made in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 1962, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176, 177; *Stevens v. Barnard,* 10 Cir. 1975, 512 F.2d 876, 878. See also for a general discussion of this approach and other citations, 10 Wright & Miller, Federal Practice and Procedure: Civil, § 2716, p. 430."

Having taken cognizance of these restrictions we, nevertheless, must conclude, after thoroughly searching the record, that there is no disclosure of evidence sufficient to raise a question of fact on the issues of the discharge of EMC's obligation to prove the extinguishment of an old debt and the establishment of a new one according to the law of novation.

This being so, that part of the judgment dismissing Tri-State's action to foreclose its materialman's lien is reversed and the case remanded to the district court with direction to enter its order consistent with this opinion.

Reversed.