**Henry Martin TIMMONS, Appellant (Plaintiff below),**

v.

**James Henry REED, NEPECO Company and Marathon Oil Company, Appellees (Defendants below).**

**No. 4681.**

Supreme Court of Wyoming.

Sept. 13, 1977.

Rehearings Denied Oct. 20, 1977.

C. S. Hinckley, of Hinckley & Hinckley, Basin, for appellant.

William S. Bon and Robert H. McCrary, Casper, for appellees James Henry Reed and NEPECO Co.

Richard E. Day, of Wehrli & Williams, Casper, for appellee Marathon Oil Co.

Before McCLINTOCK, RAPER, THOMAS and ROSE, JJ., and ARMSTRONG, D. J., retired.

ROSE, Justice.

This appeal concerns the propriety of entering a summary judgment against appellant-plaintiff in his tort and nuisance action for damages arising out of a rear-end collision, which involved two trucks on a fog-covered highway near Byron, Wyoming. Defendants, James Henry Reed and NEPECO Company (hereinafter referred to as "Reed"), and defendant, Marathon Oil Company, moved for and were granted summary judgments on the grounds that there was no disputed issue of material fact, and that plaintiff was contributorily negligent as a matter of law for failure to comply with the so-called assured-clear-distance rule. We will reverse.

In his complaint, plaintiff alleged that defendants, Reed and NEPECO, were negligent; that Marathon was strictly liable for maintenance of an "abnormally dangerous activity;" and that Marathon was strictly liable for willful and intentional maintenance of a nuisance. Defendants asserted then, and now, that plaintiff's contributory negligence was a bar to his entire action for recovery.

In setting the tone for our considerations here, we are put in mind of what we said in *Merback v. Blanchard*, 56 Wyo. 152, 105 P.2d 272, 275–276, reh. den. 56 Wyo. 286, 109 P.2d 49, where we reversed a directed verdict for the defendant, and the assured-clear-distance rule was our concern. We said:

"A question of more doubt is whether the directed verdict was justified by evidence tending to support the defense of contributory negligence. In considering this question we should keep in mind not only the rule noticed above, that evidence and inferences favorable to plaintiff will be accepted as true, but also that the burden of proof on the issue of contributory negligence was on defendants and, as stated in *Ries v. Cheyenne C. & T. Co.*, 53 Wyo. 104, 118, 79 P.2d 468, 473, that the question was one of fact that should have been submitted to the jury unless 'reasonable men can draw but one inference which points unerringly to such negligence.'"

## SUMMARY JUDGMENT

 Upon reviewing the record on appeal from the granting of a summary judgment,

". . . we have exactly the same duty as the trial judge and, assuming the record is complete, we have exactly the same material and information in front of us as he did. . . ." *Seay v. Vialpando and Anderson*, Wyo., 567 P.2d 285, 287; *Hunter v. Farmers Insurance Group*, Wyo., 554 P.2d 1239, 1244, and *Knudson v. Hilzer*, Wyo., 551 P.2d 680, 685.

We inquire from the viewpoint most favorable to the party opposing the motion. *Seay v. Vialpando, supra; Tri-State Oil Tool Industries, Inc. v. EMC Energies,* Wyo., 561 P.2d 714, 717; *Shrum v. Zeltwanger,* Wyo., 559 P.2d 1384, 1387; *Bluejacket v. Carney,* Wyo., 550 P.2d 494, 497. The moving party in a summary judgment proceeding has the burden of showing the absence of a genuine issue of material fact. *Mealey v. City of Laramie,* Wyo., 472 P.2d 787, 792; *Kover v. Hufsmith,* Wyo., 496 P.2d 908, 910, and *Gilliland v. Steinhoefel,* Wyo., 521 P.2d 1350, 1352. When there are genuine issues of material fact, the summary judgment should not be granted. *Knudson v. Hilzer, supra,* and *Johnson v. Soulis,* Wyo., 542 P.2d 867, 871–872. This is particularly true in negligence cases, where the question of negligence is usually one of fact for the jury to determine, if the evidence respecting such negligence is in conflict.[1] Summary judgments are not commonly interposed and even less frequently granted in negligence actions—because issues of negligence do not often lend themselves to summary adjudication. *Gilliland v. Steinhoefel, supra,* and *Forbes Company v. MacNeel,* Wyo., 382 P.2d 56, 57. With these restrictions in mind, we proceed to the initial determination of whether the defendants in this negligence case have sustained their heavy burden of showing there to be no genuine issue of material fact.

### FACTS

According to the pleadings, affidavits, and answers provided by the interrogatories and depositions—taken in a light most favorable to the plaintiff-appellant, on February 7, 1973, at about 7:30 a.m., plaintiff was driving an empty sugar-beet truck west on U.S. Highway 14A. It was just getting light and the temperature was about 10 degrees. Approximately two miles west of Byron, Wyoming, he encountered intermittent fog just prior to the location of an oil-treater facility maintained by Marathon. The treater facility, located immediately south of the highway, discharged 126-degree water into an enclosed conduit which ran underneath the highway to a point approximately 87 feet north of the highway. At this juncture, the heated water passes into an open ditch which conveys it to a nearby lake. Other truckdrivers, and the plaintiff, testified that on cold mornings the fog was very dense for a quarter to a half mile on either side of the water ditch, even when there was no other fog in the general area. Marathon's area superintendent, whose office was near the scene of the accident, stated that although he had seen vapors rising from the open ditch, they had never caused fog in the area which would create a highway-visibility problem. The facility had been in operation since December, 1971.

As plaintiff approached the eventual scene of the accident, he heard a chain rattling on the back of his truck and, for the purpose of securing it, he stopped on a relatively clear stretch of road. In so doing, he pulled his truck off the highway at a point which was approximately two-tenths of a mile *beyond* the turn-off leading to Marathon's treater facilities and about two-

---

1. We said in *Knudson v. Hilzer, supra,* a negligence case, at pages 684–685:

"The purpose of a motion for summary judgment is not to decide the facts but determine if any real issue exists. *Kover v. Hufsmith,* Wyo.1972, 496 P.2d 908. The question of negligence, whether non-existent, slight or gross, is one of fact and if the evidence respecting it is in conflict and such that ordinarily might draw different conclusions, a question of fact for the jury to determine is presented. *Krahn v. LaMeres,* Wyo.1971, 483 P.2d 522, 525; *Meyer v. Culley, supra,* [69 Wyo. 285, 241 P.2d 87]; *McClure v. Latta,* Wyo.1960, 348 P.2d 1057.

". . . A motion for summary judgment must 'show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Rule 56(c), W.R.C.P. These requirements are the very core of the summary judgment device. While the summary judgment procedure permits early disposition of unfounded lawsuits, if there is a material issue of fact presented, the plaintiff does not lose a right to trial. *Bluejacket v. Carney,* Wyo., 550 P.2d 494. When there are genuine issues of material fact, the summary judgment should not be granted. *Johnson v. Soulis,* Wyo.1975, 542 P.2d 867, 871–872. . . .'"

tenths of a mile *before* the eventual point of collision. Plaintiff observed no other trucks pass him while he was stopped. There is no evidence that the Reed truck did pass the plaintiff while he was stopped. There is no evidence that the Reed truck entered upon the highway at any intersection between the point where plaintiff stopped to adjust his chain and the location of the accident that was yet to happen. When the plaintiff proceeded, he had reached his fourth gear (his truck had eight gears) but was in a slowing-down process because of an extremely dense fog-bank which had formed near the Marathon ditch. As the nose of his truck entered the fog, he almost immediately saw another truck, which he described to be approximately ten feet in front of him. At about the same time, the plaintiff hit his brakes but was unable to avoid colliding with the rear portion of this vehicle, which turned out to be the water-truck driven by Reed and owned by NEPECO. Plaintiff estimated his speed at the point of impact to be about twenty miles per hour or less. He testified he had been driving this stretch of road every night for about two months and was aware of the dense fog-bank near the treater facilities. Plaintiff observed no taillights on the truck, and testified further that it was his opinion that Reed was stopped on the highway when he, the plaintiff, first sighted the vehicle just inside the fog-bank.

Reed, on the other hand, said that he had just picked up a load of water from the Marathon treater facility and was proceeding at about twenty-five miles per hour at the time of impact. The route taken by Reed was the same as that being utilized by plaintiff, which means that at some point in time the defendant-truck passed the location where the defendant either had stopped—or would stop—to adjust his chain. Reed also testified that he could see some seventy feet ahead of him as he proceeded into the fog and that both his headlights and taillights were on and operating.

Other sugar-beet truckdrivers testified, by affidavit, that Reed's truck was old and either did not have taillights, or the taillights were not usually visible due to an accumulation of oil and dirt. One of the drivers stated that he had previously had an accident in the fog on this part of the highway.

The investigating patrolman testified, in his deposition, that twenty-five miles per hour was a safe speed for this portion of the highway and that he proceeded into and through the fog-bank at approximately this speed. He also stated that plaintiff had indicated, later in the hospital, that he was going forty miles per hour at the time of impact. Plaintiff denied making the statement. The patrolman made no independent determinations of speed, nor did he examine the tire marks in the area of the accident for purposes of ascertaining the respective speeds of the vehicles.

■ We said in *Johnson v. Soulis, supra,* at 872:

". . . [F]or purposes of ruling upon a motion for summary judgment a fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. *Such a fact would necessarily affect the application of the appropriate principle of law to the rights and obligations of the parties.* In considering a motion for summary judgment it is appropriate for a court to identify the essential elements of the plaintiff's cause or of the defense asserted, and to then determine the materiality of any fact in the light of whether it will establish or refute one of those essential elements. *If it does not have that effect, it would not be a material fact in the controversy, and a genuine issue with respect to that fact, no matter how sharp, would not foreclose the granting of a motion for summary judgment.*" [Emphasis supplied]

The emphasized language in *Johnson* indicates that a determination, as to whether or not a fact is material, depends greatly upon the principle of law to be applied. In the present case, we are primarily concerned with the application of the facts to the asserted defense of contributory negli-

gence—particularly as it relates to the assured-clear-distance rule—and we are further concerned with plaintiff's denominated nuisance action.

### ASSURED CLEAR DISTANCE

■ Essentially, it is the contention of the defendants, Reed and NEPECO, that, since plaintiff testified his visibility at the time of the accident was approximately ten feet and his speed was about twenty miles per hour, he must, as a matter of law, be held contributorily negligent for failure to comply with the assured-clear-distance rule. In support of this position, the last-mentioned defendants rely upon a strict application of the rule which holds:

> " '. . . [W]here the vision of the driver of an automobile is obscured, whether by the lights of an approaching car, fog, smoke or for any other reason, it is his duty to stop until visibility is restored, or to reduce his speed and have his car under such control that he can stop immediately if necessary. . . .' "
> *Price v. State Highway Commission*, 62 Wyo. 385, 167 P.2d 309, 313.

This doctrine has not invariably been applied by this court, where other facts are present and where other rules of care and conduct are found to be in conflict therewith. *Price* was a blowing-snow case where the visibility-impairment was created by an operating snowplow. It was decided upon the defendant's demurrer as this case was determined by summary judgment, but there are features of *Price* and the case at bar here which distinguish them. In *Price*, we observed that the plaintiff had ignored the warnings of the unusual cloud of snow on the highway ahead of him in circumstances in which he could and should have expected it to have been created by the snowplow equipment.

We further observed in *Price* that there was present still another warning which the plaintiff ignored—namely the freshly-cleared highway over which he was traveling prior to coming upon the cloud of snow obscuring his vision of the snow-removal equipment. There were no such signs of danger present for the plaintiff to observe in this case.

Another feature distinguishes *Price* from the instant matter—at least in the context of the law of summary judgment, according to which this case was disposed of in the district court. In *Price*, the defendant's snowplow operator had a right and a duty to do what he was doing and be where he was. He was, in all respects, operating within the law. Here, we find the record to present a question of fact concerning whether or not, at the time of the impact—the defendant was in compliance with the law and his duty of care to following traffic. As we have seen, the plaintiff had stopped to fix his chain—the defendant did not pass him—yet, after driving two-tenths of a mile, and immediately upon entering the fog-bank, the collision occurred. The plaintiff testified he thought the defendant was stopped when he first observed his truck, at which time he, the plaintiff, was traveling 20 miles per hour. Defendant said he was traveling at the rate of twenty-five miles per hour when struck. These facts are irreconcilable. Where was the defendant-truck from the time when plaintiff was stopped fixing the chain until the accident happened, keeping in mind that it occurred just as the plaintiff entered the fog-bank? How can a vehicle traveling twenty miles per hour overtake a vehicle traveling twenty-five miles per hour? To pose the questions is to pique the curiosity of any fact-finder.

In *Templar v. Tongate*, 71 Wyo. 148, 255 P.2d 223, the decedent, driving slowly or stopped, met his death when defendant topped the hill, was blinded by the sun and struck the decedent's vehicle in the rear. In reaching a conclusion that the defendant was not guilty of negligence as a matter of law for failing to reduce his speed or stop when his vision was so impaired and that the question of negligence was for the jury, we cited the following authorities and concepts and utilized the following logic to come to our conclusion:

> "In the case of *McBride v. Baggett Transp. Co.*, 250 Ala. 488, 35 So.2d 101,

105, plaintiff recovered a judgment against defendant on account of a collision. It was claimed that plaintiff was guilty of contributory negligence as a matter of law since he was blinded by the lights of an approaching truck, and apparently neither slackened his speed nor stopped. The court refused to say whether plaintiff was guilty of negligence as a matter of law, and stated that his duty was a question for the jury. The court, after quoting from the Florida case of *Mathers v. Botsford*, 86 Fla. 40, 97 So. 282, 32 A.L.R. 881, stated in part: 'But a motorist may assume that others will not negligently park in the highway at night, when the vision of others may be obscured. But this will not absolve him from using reasonable care under the circumstances. 2 Blashfield's Cyc. on Automobile Law, Perm.Ed. § 1227. Many cases hold that it is not the absolute duty of a motorist blinded by the lights of an approaching car at night to stop, but that whether such driver was negligent is a question for the jury, especially when a car is illegally parked ahead of him without proper lights. * * * *In the absence of knowledge to the contrary, users of highways may assume that other users will use them in a lawful manner, and until he has such knowledge he is entitled to govern his actions in accordance with that assumption. In such situation, the question is usually for the jury. Sidle v. Baker*, 52 Ohio App. 89, 3 N.E.2d 537; *Jacobs v. Jacobs*, 141 La. 272, 74 So. 992, L.R.A.1917F, 253.' " *Ibid.*, p. 231. [Emphasis supplied]

We went on to analyze and quote from *Sidle v. Baker*, supra, when we said:

"In *Sidle v. Baker*, supra, the defendant had to pass over the crest of a hill, as in the case at bar. The court said 52 Ohio App. at page 93, 3 N.E.2d at page 540: 'He was not required to see what could not be seen by looking. Nor, in the absence of any visible sign of danger, did he owe to the defendant any duty to assume that the defendant would be unlawfully parked on the highway, directly in his path. On the contrary, he had, under such circumstances, a right to assume that all other users of the highway would use it in a lawful manner, and that if it became necessary to stop they would stop in a lawful manner, and would park in the manner prescribed by law.' In *Jacobs v. Jacobs*, 141 La. 272, 74 So. 992, 996, 997, L.R.A.1917F, 253, the court stated: '*The rule is well established in the jurisprudence of this state that a person using a public highway, * * * has a right to presume and to act upon the presumption, that the way is safe for ordinary travel, even at night, and he is not required to be on the lookout for extraordinary dangers or obstructions to which his attention has not been called.*' See similar in effect Berry, Automobiles (5th Ed.), § 214 and 3 Huddy, Cyc. Automobile Law, § 15. See further cases digested in Decennial Digest under Automobiles, § 245(47)." *Ibid.*, pp. 231–232. [Emphasis supplied]

To the same effect we said:

". . . In *Biladeau v. Pomerenke*, 33 Wash.2d 145, 204 P.2d 518, one of the syllabi reads: 'Where truck driver had no knowledge that highway might be blocked by automobiles stopped alongside highway from place to place ahead of him because of snow removal operations, driver as a prudent man could assume that other drivers ahead of him were complying with rules of the road against blocking the highway.' " *Ibid.*, p. 232.

We further said in *Templar* :

"The defendant in this case did not stop. He perhaps slackened his speed somewhat but not a great deal. Hence it is quite clear that we cannot say that the defendant was absolved from responsibility herein as a matter of law by reason of the fact that the sun obscured his vision. On the contrary the only doubt is as to whether he should be declared guilty of negligence as a matter of law—as some of the courts would apparently do—or whether, considering all of the facts and circumstances herein, including the behavior of the deceased, the question of defendant's negligence was properly left

to the jury. It has not been easy for us to arrive at a conclusion and we have, to use Justinian's phrase, 'burned much midnight oil' in trying to find a case similar to the case at bar, but have not succeeded. We are reminded of what was stated in *Loney v. Laramie Auto Co.*, 36 Wyo. 339, 354, 255 P. 350, 354, 53 A.L.R. 73, that: 'The issue of negligence or contributory negligence is ordinarily one to be determined by the jury. 20 R.C.L. 109, 166. That is true, even in a case where the testimony, as in the case at bar, is undisputed, if different minds may fairly arrive at different conclusions, and where the inferences from the facts are not so certain that all reasonable men, in the exercise of fair and impartial judgment, must agree upon them.' And in 65 C.J.S. Negligence § 252, p. 1129, it is stated that: 'The question whether the conduct of defendant measured up to the standard of "ordinary care," "reasonable prudence," "due diligence," "reasonable care," or the like is usually to be determined by the jury under proper instructions.' In *Phillips v. Denver City Tramway Co.*, 53 Colo. 458, 128 P. 460, 462, Ann.Cas. 1914B, 29, the court in stating the rule as to the determination of negligence said: 'It is only in the clearest of cases, when the facts are undisputed and it is plain that all intelligent men can draw but one inference from them, that the question is ever one of law for the court.' " *Ibid.*, pp. 229–230.

We then undertook to reconcile the above-stated concepts with the rule upon which appellees rely here and found the issue of reasonable care in the circumstances to be a jury question. We said, at 255 P.2d, p. 232:

"Probably, most, if not all the courts, would agree to the general rule stated in the several cases last cited. But due reflection would seem to indicate that if carried to its logical conclusion it does not harmonize, or at least entirely harmonize, with the rule that when blinded by the elements of nature, a motorist must at all times reduce speed or stop at his peril. However the rules relating to motorists are primarily laid down for the purpose of safety to all. So that the assumptions mentioned cannot be carried to the extent of relieving motorists of the duty of reasonable care. It was said in *Ratcliffe v. Speith*, 95 Kan. 823, 149 P. 740, 741, that: 'They have no right, however, to assume that the way will always be clear and travelers will always be alert to avoid collision.' See also *Mahone v. Bowman*, Tex.Civ.App., 70 S.W.2d 323; *Murray v. Pearson Appliance Store*, [155 Neb. 860, 54 N.W.2d 250], *supra.* *Hence it would seem that whether or not a motorist has exercised reasonable care, and was justified in relying on the assumption above mentioned, must generally depend on all the facts and circumstances in a case, and there are doubtless at least some cases in which both factors above mentioned appear, which should be left to the jury.* . . ." [Emphasis supplied]

The appeal here presents a striking similarity to *Templar* in many relevant respects. In *Templar*, the facts revealed that in the face of a rising sun, the plaintiff's decedent was either stopped or traveling very slowly in his lane of traffic, all contrary to his duty of care to following traffic using the highway. We held that the defendant, while bound to exercise reasonable care in coming over the crest of the hill with the sun in his eyes, had a corollary right to assume others would be using the highway in a safe manner. He was permitted to assume the highway to be safe for ordinary travel. We acknowledged that he was not bound to be on the lookout for extraordinary danger. Therefore, the issue of his negligence was for the jury.

We do not find or even intimate here that the defendant-truck was in fact unlawfully parked in plaintiff's path in the fog-bank. In the context of summary-judgment proceedings, however, we are bound to note that the plaintiff *testified* that he believed the truck was stopped, and the attendant facts lend corroboration to this statement. This does not absolve the plaintiff of exercising reasonable care, of course, but, under *Templar* and the authorities therein relied upon, it does cast this inquiry as

one where the plaintiff's care—or lack of it—is a question of fact. This is so because the duty to comply with the assured-clear-distance rule must be tempered with the plaintiff's corollary right to assume others will use the highway in a lawful manner.

In the instant case, the parties relying upon the motion for summary judgment must, under the rules of *Templar, supra,* prove without issue of fact that defendant-Reed was in compliance with the law—that is, that he was not stopped or traveling so slowly as to present an unwarranted danger to those lawfully using the highway. The plaintiff said he believed Reed was stopped—a statement denied by Reed—so there is a question of fact on the material issue of plaintiff's alleged contributory negligence. This being so, the appellees have, therefore, failed to discharge the burden of proof required of them in a summary-judgment proceeding. The movant must show the *absence* of a genuine issue of material fact. *Mealey v. City of Laramie, supra;* *Kover v. Hufsmith, supra;* *Gilliland v. Steinhoefel, supra,* and *Knudson v. Hilzer, supra.*

In *Merback v. Blanchard, supra,* where the court directed a verdict against the plaintiff, we reversed. We held that the assured-clear-distance rule should not be applied by the courts when there is evidence from which a jury may find that there were disconcerting circumstances affecting the driver's actions at the time of the collision. We held that where the coloring of a truck blended into the road surface; where the defendant's taillights were dim; and where the plaintiff may have been momentarily blinded by the lights of an approaching car—the plaintiff could not be held negligent as a matter of law. The question of his negligence was one of fact for the jury. We said in *Merback,* at 105 P.2d 276, 277:

"There are many authorities announcing the rule that the driver of an automobile who fails to stop or turn aside to avoid an obstruction within the range of his lights is negligent as a matter of law. We think, however, that most of the courts recognize that this is not a hard and fast rule that must be invariably applied, and refuse to apply it when there is evidence from which the jury may find that there were disconcerting circumstances affecting the driver's actions at the time of the collision. *Jackson v. W. A. Norris, Inc.,* 54 Wyo. 403, 93 P.2d 498, and cases cited; *Morehouse v. City of Everett,* 141 Wash. 399, 252 P. 157, 58 A.L.R. 1482; *Murphy v. Hawthorne,* 117 Or. 319, 244 P. 79, 44 A.L.R. 1397; *Tresise v. Ashdown,* 118 Ohio St. 307, 160 N.E. 898, 58 A.L.R. 1476; *Coca-Cola Bottling Co. v. Shipp,* 174 Ark. 130, 297 S.W. 856; *Main Street T. & S. Co. v. Smith,* 166 Tenn. 482, 63 S.W.2d 665. And see notes: 44 A.L.R. 1403; 58 A.L.R. 1493; 87 A.L.R. 900, and 97 A.L.R. 546. Comments: 22 Minn.L.Rev. 877; 23 Calif.L. Rev. 498; 4 Rocky Mountain L.Rev. 231; 34 Ill.L.Rev. 65."

There is much of the same kind of evidence in this record which relates to the visibility of the defendant-vehicle, especially with respect to its usually dirty condition and whether the taillights were operational.

We call attention to *Jackson v. W. A. Norris, Inc.,* 54 Wyo. 403, 93 P.2d 498, where we held that in a motorist's action for injuries sustained in a head-on collision at night with a sprinkling-truck on a highway construction job, the question of whether or not the sprinkler's lights were turned on was for the jury. In *Jackson, supra,* we further held that it was for the jury to decide whether the plaintiff was negligent in exceeding the speed limit in the construction area where the sprinkler-truck was operating.

In *Runnion v. Kitts,* Wyo., 531 P.2d 1307, another snowplow case, the assured-clear-distance question was considered by this court. That case, too, is to be distinguished from the appeal which we consider here. While the appellees here rely upon the rule of *Runnion* to support a summary judgment, it must be remembered that the issue arose in *Runnion* by way of a criticized instruction only after the fact-finder in that case had held for the defendant. In other

words, the assured-clear-distance problem had received jury consideration, as compared to the instant matter where the issue is called up in a summary-judgment context. We said in *Runnion* that the assured-clear-distance rule is

" . . . hardly more than the standard set by § 31–130, W.S.1957, C.1967, 1973 Cum.Supp., when it recites: '(a) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing.' . . ." *Ibid.*, p. 1311.

We also corrected the criticized instruction and held the following to be a proper statement of the law:

" 'The court instructs the jury that a motorist must operate his vehicle at such a rate of speed and with such control as to be able to stop in time to avoid an obstruction discernible within the motorist's length of vision ahead, or within the assured clear distance ahead, when such vision is interfered with by fog, mist, cloudy weather, or similar atmospheric conditions. *It is negligence not to do so. It is for you to decide whether or not such facts exist in this case, so as to require application of this rule of law.'* " [Emphasis in text] *Ibid.*, p. 1311.

The facts of *Runnion* are like the facts of *Price*. There was no question in *Runnion* about whether the defendant-snowplow-operator had a right to be operating where and in the manner that he was. Therefore, the assured-clear-distance rule was not set against the mitigating doctrine of *Templar v. Tongate, supra*, which permits the plaintiff to assume that others will use the highway in a lawful manner and where the defendant is not so conducting himself, the jury will be required to decide whether the plaintiff, in not stopping, was acting with reasonable care. In other words—as quoted from the decision in *Runnion*:

" ' . . . *It is for you* [the jury] *to decide whether or not such facts exist in this case, so as to require application of this rule of law.'* " [Bracketed matter supplied]

In the instant case, the court has determined *as a matter of law* that the plaintiff was negligent in the face of a rule which dictates that this is a question for the jury. *Runnion v. Kitts, supra.* This was error.

■ We find that universal application of the assured-clear-distance rule is quite impossible and have alluded to this position in other decisions. *Merback v. Blanchard, supra*; *Templar v. Tongate, supra*; and *Runnion v. Kitts, supra.* See Prosser, Law of Torts, § 35, at 189–190 (4th ed. 1971), and *Blaak v. Davidson*, 84 Wash.2d 882, 529 P.2d 1048, 1049. This is merely a recognition that absolute rules of conduct in the negligence field are generally inappropriate. Facts and circumstances surrounding an automobile collision are seldom the same, especially when various atmospheric conditions are involved. See Annotation, 42 A.L.R.3d 13. We do not mean to imply that in every case the question of contributory negligence—as it relates to the assured-clear-distance rule—must be submitted to the jury. Where the facts are such that reasonable men can draw only one conclusion, the question is one of law for the courts. *Ries v. Cheyenne Cab & Transfer Co., supra.* Where the converse is true, it is a question for the jury. *Templar v. Tongate, supra.* We would, however, go so far as to say that only under unusual and exceptional circumstances indicating clear fault and liability should the court hold a party negligent as a matter of law. *Blaak v. Davidson, supra*, 529 P.2d at 1051. The present case does not reveal such circumstances, especially in light of the principles we herewith summarize.

■ When a driver is confronted with adverse driving conditions, such as fog, he is under the duty to exercise reasonable or ordinary care, having regard for such unusual and extraordinary circumstances. *Slusher v. Brown*, Ky., 323 S.W.2d 870, 873; and 8 Am.Jur.2d, Automobiles and Highway Traffic, § 729. In appropriate circumstances, the assured-clear-distance rule can be applied to hold a plaintiff contributorily negligent as a matter of law.

*Price v. State Highway Commission, supra.* This is not the case, however, where a dangerous situation, which the driver of the automobile has no reason to expect, suddenly appears in front of him, and a driver is not obligated by the doctrine of ordinary care to keep a lookout for an unlighted truck in the lane of his traffic. *Slusher v. Brown, supra.* See *Craker v. Allstate Insurance Company,* 259 La. 578, 250 So.2d 746; *Little v. Mississippi Chemical Express, Inc.* (La.App. 3 Cir. 1973), 285 So.2d 267, 270–271 and *Merback v. Blanchard, supra.* Where a vehicle in the same lane of traffic is unlighted, or is otherwise obscured, then, ordinarily, a following driver is not contributorily negligent as a matter of law, even though he is not able to stop within the range of his vision. *Langill v. First National Stores,* 298 Mass. 559, 11 N.E.2d 593; *Kando v. Dick Weller, Inc.,* Mass., 346 N.E.2d 924, and *Merback v. Blanchard, supra.* This principle naturally arises from the conclusion that drivers are bound to anticipate what is likely to happen, but not that which is unusual, unlikely, remote or slightly probable. *Jackson v. W. A. Norris, Inc., supra,* 93 P.2d at page 501. *Templar* and *Merback, supra.* The assured-clear-distance rule, in this context, should not be viewed as inflexible, but rather as dependent upon a determination as to whether the motorist could reasonably assume, under the circumstances, a clear highway or whether, on the other hand, circumstances were present which did or should put him on inquiry of possible dangers. *Templar*; *Price*; *Merback,* and *Jackson, supra.*

Under the facts of record, we hold that there was a material issue of fact on the question of plaintiff's contributory negligence and the issue should not have been disposed of by summary judgment.

## CONTRIBUTORY NEGLIGENCE AND NUISANCE

The second question raised in this appeal is whether contributory negligence is a defense to the nuisance action against Marathon. Even if we were to find that such a defense is appropriate, our preceding discussion would indicate that, in this case, the plaintiff cannot be held contributorily negligent as a matter of law for the purposes of summary judgment. Since the case must be remanded for trial, we find it advisable to discuss the substantive issues raised by this question. Marathon admits that the defense of contributory negligence is not usually available in a nuisance action. 65 C.J.S. Negligence § 11. Marathon, however, would characterize plaintiff's action as essentially grounded in negligence—in which case contributory negligence is available as a defense.

Under fact situations similar to the instant appeal, the courts of other jurisdictions have spoken interchangeably about the tort concepts of negligence and nuisance. *Ft. Wayne Cooperage Co. v. Page,* 170 Ind. 585, 84 N.E. 145, 146–147 (1908); *Lambert v. Emise,* 120 N.J.L. 164, 199 A. 44, 45 (1938), and 58 Am.Jur.2d, Nuisances, § 3, at 557–558. Liability for a nuisance may be imposed on any of three bases: (1) intentional invasion of the plaintiff's interests, or (2) negligent invasion of such interests, or (3) conduct which is abnormal and out-of-place in its surroundings and so falls fairly within the principle of strict liability. Although not completely clear, plaintiff's causes of action against Marathon seem to be based on the assertion of a public nuisance from which he has received particular damages. The problem arises when plaintiff attempts to draw a dividing line between intentional and negligent conduct. Marathon may have intentionally created a public nuisance, but it may not have intended the damages which resulted to the plaintiff. See Prosser, Law of Torts, § 91, at 609 (4th ed. 1971). The distinction attempted is an important one since usually in cases based on intentional conduct, resulting in an absolute nuisance, contributory negligence is no defense—which is not the case where the claim is inherently based on negligence. *Terrell v. Alabama Water Service Co.,* 245 Ala. 68, 15 So.2d 727, 730–731 (1943).

The general rule applicable to the type of case now before us is stated in Restatement, Torts 2d, § 371, as follows:

"A possessor of land is subject to liability for physical harm to others outside of the land caused by an activity carried on by him thereon which he realizes or should realize will involve an *unreasonable risk* of physical harm to them under the same conditions as though the activity were carried on at a neutral place." [Emphasis supplied]

The defendant, therefore, is considered to have created only a risk as to injury, and with respect to the resulting damage his conduct cannot be called anything more than negligent. Prosser, Law of Torts, § 91, at 609–610 (4th ed. 1971). The landowner in close proximity to a public highway must exercise reasonable care to avoid injury to the traveling public arising from unnecessarily-dangerous conditions created by him on the land, where the consequences of a failure to do so are reasonably foreseeable. *Lavelle v. Grace*, 348 Pa. 175, 34 A.2d 498, 501 (1943). A violation of this duty constitutes negligence. *Pitcairn v. Whiteside*, 109 Ind.App. 693, 34 N.E.2d 943, 947 (1941); *Oviatt v. Garretson*, 205 Ark. 792, 171 S.W.2d 287, 292 (1943); *Wynn v. Parisi*, 24 Misc.2d 933, 204 N.Y.S.2d 443, 445 (1960), and 4 Blashfield, Automobile Law and Practice, § 163.12, at 383–385 (3rd ed. 1965).

We are not prepared to hold on the basis of this record that Marathon has created an absolute nuisance—that is essentially a jury question to be resolved on the facts and circumstances disclosed at trial. We do hold, however, that the defense of contributory negligence will be available to Marathon at trial if the evidence discloses that plaintiff's nuisance action is inherently based on negligence.

The summary judgment entered against the plaintiff-appellant is reversed.

RAPER, Justice, specially concurring.

I concur in the opinion of the court and in its result, with the exception I note.

The only purpose of this special concurrence is to point out that while it has been loosely said by this court in *Gilliland v. Steinhoefel*, Wyo.1974, 521 P.2d 1350, by others, and now again, that summary judgments are not commonly interposed and even less frequently granted in negligence actions, the observation is not sound and should not discourage the use of the summary judgment technique in negligence actions, where appropriate. This court has sustained its grant in quite a number of negligence cases. *Bluejacket v. Carney*, Wyo.1976, 550 P.2d 494; *Apperson v. Kay*, Wyo.1976, 546 P.2d 995; *Wells v. Jeep Corporation*, Wyo.1975, 532 P.2d 595; *Maxted v. Pacific Car & Foundry Company*, Wyo. 1974, 527 P.2d 832; *Clouser v. Spaniol Ford, Inc.*, Wyo.1974, 522 P.2d 1360; *LeGrande v. Misner*, Wyo.1971, 490 P.2d 1252; *Parker v. Heasler Plumbing & Heating Company*, Wyo.1964, 388 P.2d 516; *Lieuallen v. Northern Utilities Company*, Wyo.1962, 368 P.2d 949. There may be others but these are sufficient to make the point.

We must not permit the viability of the summary judgment procedure to be weakened in any respect. The same standards apply to negligence actions as to any other action. If there is no genuine issue of fact and a party is entitled to judgment as a matter of law, he should not be forced to trial. It is unnecessarily expensive and needlessly takes the valuable time of courts, litigants, witnesses and jurors. Rule 56(c), W.R.C.P. There is no exception with respect to negligence actions. They do lend themselves to summary judgment disposition, just as any other case.